[Crim. No. 2492. First Dist., Div. One. Jan. 30, 1948.]

THE PEOPLE, Respondent, v. WILLIAM J. RALEIGH, Appellant.

Joseph P. Lacey and Harmon D. Skillin for Appellant.

Fred N. Howser, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

BRAY, J.—Defendant, an ex-convict, was convicted of violating the Dangerous Weapons' Control Law of 1923 (Stats. 1923, p. 695, as amended; 1 Deering's Gen. Laws, Act 1970) in that he had in his possession and under his custody and control a certain firearm capable of being concealed on his person. Defendant does not challenge the sufficiency of the evidence to justify the verdict, but makes two contentions: first, that the district attorney was guilty of prejudicial misconduct; and secondly, prejudicial error of the court in admitting certain testimony.

Defendant lived in a home on Clay Street in San Francisco, owned by Jensen, his stepfather, and occupied by a number of people as tenants. The house is divided into three apartments. Jensen and one Adams occupied a kitchen and bedroom on the second floor. A Mr. and Mrs. McCune occupied another apartment on that floor. Defendant, his wife, her two married daughters and their husbands, her three younger children and two grandchildren occupied the first floor. There is a basement below the Raleigh kitchen, to which everyone in the house has access. The basement is entered through an outside door which has a combination lock on it to keep the children out. The combination was written above the door so that anyone could read it. Defendant, who was a painter by trade, stored his tools and paints and brushes in this basement.

On February 23, 1947, while defendant was in the county jail, two police officers acting upon information they had received, went to the Raleigh home. They were admitted by Mrs. Raleigh, and although they had no search warrant, upon being informed that they had come to search the house, she willingly allowed a complete search to be made. One of the officers, accompanied by Mrs. Raleigh, went to the bedroom occupied by her and defendant. In her presence, the officer found concealed under a mattress a loaded .45 calibre automatic clip in a black velvet bag. Mrs. Raleigh stated that she had never seen it before.

In the meantime the other officer went to the basement. Defendant's stepson, 12 years of age, opened the combination lock on the door to let him in. In the presence of one Giandrea, the husband of one of Mrs. Raleigh's daughters, and who lived on the premises, the officer found two fully loaded .45 calibre automatics. They, together with two fully loaded separate clips, were in a manila bag or envelope which was reinforced by another light-proof bag or envelope, the kind used for photographic materials. The bag and contents were concealed in a "little niche" between the walls. Another officer testified that after defendant's arrest upon the charge here, he asked defendant about the guns and how they came to be where they were found. "At first, he said he had no knowledge of them and then he said, 'I know how they got there and I know who put them there,' and I said, 'Who?' and he just laughed." Mrs. Raleigh, Mrs. McCune, Mr. and Mrs. Giandrea, Jensen, and a man named Petersen, who worked with defendant as a painter and had been in the basement many times, all denied owning the guns or ever having seen them in the basement or in defendant's possession.

To connect defendant directly with the ownership or possession of the guns, the prosecution called one Ramos. It is in connection with his testimony that the claimed error and misconduct arises. Ramos testified, without objection, that he was in the county jail on a charge of three counts of burglary. He had known defendant for about six or eight months. One Viles, a son-in-law of Mrs. Raleigh, had brought defendant to him. (Mrs. Raleigh testified that Ramos came to the house any time he felt like it. Another son-in-law, Giandrea, had also seen Ramos there on occasions.) When shown one of the guns in evidence, which had an ivory han-

dle, Ramos stated that he had seen defendant with a similar gun in defendant's home, and two or three times in an automobile; that on one occasion, apparently January 28th, while defendant and a third party were in "the car" (the witness did not know whose car it was) Ramos took the gun out of the glove compartment, put it on the floor of the car or in a brief case, and later handed it to defendant. Ramos went with defendant to the latter's home and defendant did not hand the gun back or put it in the glove compartment. Witness saw the gun in defendant's home on three or four occasions. He had never seen the other gun before it was shown him on the witness stand. On cross-examination Ramos testified that he was a professional photographer; that the type of black bag found in defendant's bedroom and the type of envelope were ones generally used in photographic work, the bag being used for carrying a reflector or flash gun, and that he had owned such a bag, and that it had been in witness' home and in defendant's basement. Also he testified that he had seen the ivory-handled gun before in such an envelope in defendant's basement. The foregoing evidence, which was clearly admissible, is sufficient to establish the defendant's guilt, if the jury believed Ramos, and it is evident that in spite of the fact that Ramos was then in jail on three burglary counts, the jury believed him.

This brings us to the incidents as to which prejudicial error is claimed. Ramos had just testified, without objection, that he had seen the ivory-handled gun two or three times in the car. The district attorney then asked a question indicating that the two men were going on a burglary with the guns. The defendant's objections to these questions were sustained by the court. The district attorney then offered to prove that the defendant used the gun in a burglary about a month before the officers found it. The court refused to admit the evidence. Again, later, the district attorney attempted to bring out the same matter. The objection was sustained. In spite of the ruling he asked practically the same question again. The court once more sustained an objection.

On cross-examination, the attorney for defendant asked Ramos if, in April, he, defendant, and one other were in the municipal court on three charges of burglary growing out of a confession by Ramos. The witness replied that he did not know whether they did or not. She then asked him if the

charges against Raleigh had all been dismissed, and he stated they had. On redirect examination the district attorney referred to the three burglary charges and then started to ask "In those three burglaries—" He was interrupted by defense counsel who strenuously objected to the prosecution proceeding on these lines. The court made no ruling. The district attorney then asked: "Any of those jobs or burglaries that you were brought up before the Municipal Court for, was Raleigh the possessor of this gun?" The court overruled the objection. Upon a repetition of the question by the district attorney the following occurred: "Q. On any of those three burglaries that you were charged with, did you ever see this gun, People's No. 3 in evidence, on Mr. Raleigh? A. No, we didn't pack any guns on the jobs. Q. You didn't pack any guns on the jobs? A. They were left in the automobile. Q. Let's put it this way: when you went out of the automobile to go on these jobs, were these guns, also this gun, People's No. 3, carried by Mr. Raleigh? A. He never packed it. Q. Never packed it to the job? A. No. Q. Was it in the automobile? A. It was in the automobile. Q. Now —is that one of the three occasions on which you already told the Jury that you took this gun from the glove compartment of the automobile and handed it to Raleigh; is that one of those three jobs? A. Yes." Defendant contends that the admission of this testimony was prejudicial error.

Thereafter the district attorney asked the following questions: "Q. Now, going back to the three charges of burglary you were asked about by Mrs. Cofer [attorney for defendant], Mr. Ramos, could you tell us the first one—the date the first one took place?" The court sustained the objection. The district attorney then asked: "Q. Tell us the second of those three burglaries you were with the defendant?" The court again sustained the objection. The district attorney persisted: "Q. Tell us the third, or the last one in which the defendant participated, in which the defendant had the bone-handled gun?" The court again sustained the objection.

Defendant contends the admission of the above-quoted testimony and the persistent asking by the district attorney of questions which the court had ruled inadmissible deprived the defendant of a fair trial.

Before discussing the alleged misconduct of the district attorney, we will consider the admissibility of the ad-

mitted testimony, and of that which the district attorney was trying to get into evidence.

In view of the fact that a number of people had access to the Jensen basement (it was the theory of the defendant that almost anyone could have entered the basement and placed the guns there) it was important, in order to convict defendant of having the guns under his custody and control to show that the defendant had the ivory-handled gun in his possession on other occasions. Ramos testified that he had seen that gun in defendant's possession on other occasions and that on one occasion he had taken the gun from the glove compartment of the car and handed it to defendant. Defendant contends that that is as far as the prosecution could go; that it is immaterial what defendant was doing or going to do with it. The fact of possession could be shown but not the purpose. That is limiting the testimony too narrowly. The defendant, although he did not testify, by his plea of not guilty, denied any connection whatever with the gun. When the defendant Ramos testified that he had seen the defendant with the gun, the jury were entitled to be told what the defendant was doing with it, not for the purpose of connecting defendant with another crime or other crimes (although incidentally, it would do that), but so that the jury could determine whether Ramos was telling a reasonable story or not. For a witness to say, in effect, ''Oh, yes, on a certain day I saw the defendant with the gun in an automobile,'' and stop there, would not be too convincing. The witness is entitled to explain what the defendant was doing with the gun in order for the jury to determine whether the witness' story is reasonable or unreasonable, believable or unbelievable.

*People* v. *Canales,* 12 Cal.App.2d 215 [55 P.2d 289], in which a hearing was denied by the Supreme Court, is a closely analogous case. There the defendant, an ex-convict, was charged with the same offense as the defendant here, except that the deadly weapon was a ''billy.'' To prove his ownership of the billy which was found in the car in which were defendant and two others, the trial court admitted evidence, first, that defendant had engaged in a fight some two months previous to the trial; secondly, that he had told a strikebreaker, ''You are not going to last very long on that job, we are going to fix you fellows''; thirdly, that he had previously drawn a knife on a strikebreaker; and fourthly,

that he previously drove in front of a boarding house catering to employed miners, and shouted vile names at the proprietors. While the admission of such evidence seems to be going a long way, the rule announced by the court is sound. The court said (p. 220): "It is the claim of appellant that these 'other offenses' are so different in their elements to the offense for which he was on trial that it was error to admit them.

"It will be recalled that appellant denied possession or ownership of the weapons in evidence, intimating that they had been planted in the car; therefore where there is a denial of the possession of the instrument any evidence which tends to show a motive or reason to possess such an instrument is admissible as bearing upon the fact of possession."

In *People* v. *Cato*, 13 Cal.App.2d 391 [56 P.2d 1245], also a case in which the Supreme Court denied a hearing, defendant denied owning the shotgun used in a holdup. Evidence was admitted showing that in a previous crime, defendant had a shotgun in his hands. The court said (p. 394): "Appellant Cato claims that the trial court committed error in the admission of evidence disclosing the commission of another offense, and in the giving of instructions relative to the defense of alibi, and also the degree of the offense and the imposition of the particular sentence in the case. It is true the rule is well established that a defendant in a criminal cause can be tried for no other offense than that charged and it is not competent for the prosecution to prove the commission of independent crimes by the defendant, the evidence of which has no tendency to prove some material fact in connection with the particular crime charged. However, the rule has many exceptions. Where the evidence is otherwise competent it cannot be excluded merely because, in producing such evidence, there is shown the commission of other offenses or wrongful acts. (8 Cal.Jur. 60-73.) Thus where a person denies knowing another it is competent to show that the person knew the other, even though such a showing tends to bring out the commission of an independent offense. (*People* v. *Morales*, 143·Cal. 550 [77 P. 470].) So, also, where a defendant denies that he had a particular instrument used in the commission of an offense it is competent to show by other evidence that such instrument was possessed by the defendant at a previous time, even though the testimony tends to show independent wrongful acts. (*People* v. *Madison*, 3 Cal. 2d 668 [46 P.2d 159].) This is the precise situation here pre-

sented. Defendants had denied knowing each other and had likewise denied having in their possession, or ever having seen, a sawed-off shotgun. It was competent, therefore, for the prosecution to show that on a previous occasion appellant was seen with a shotgun in his hands, even though such evidence tended to reveal the commission of another wrongful act.'' See, also, *People* v. *Bingham,* 44 Cal.App.2d 667, 669 [112 P.2d 941], to the same effect.

 The court very properly gave an instruction limiting the use which the jury could make of the admitted testimony. It pointed out that it was not admitted to show that defendant had committed other crimes, but was limited to any bearing the jury might believe it had in tending to show that the defendant was the owner of the gun and that it was in his custody when found in his house.

It is clear that under the rule of the foregoing authorities, evidence of defendant's prior possession of the gun, and the circumstances thereof, was admissible even though such evidence tended to show independent wrongful acts. It is contended, however, that even though such rule might apply under ordinary circumstances, it cannot apply where, as here, there was a court dismissal of the independent crimes shown. However, the rule is well settled in England as well as in this country that an acquittal (and of course a dismissal at the preliminary examination is not even as strong in effect as an acquittal) does not prevent the admissibility of the evidence. As said in Wharton's Criminal Evidence, 11th edition, volume I, page 571, section 363: ''The question has been raised, in criminal trials, whether a previous indictment for, or acquittal or conviction of, the other crime, has any effect upon the admissibility of the evidence of such other crime. It may be safely stated that the almost universal judgment is that neither of these circumstances will operate to the rejection of such evidence. And it is believed that most of the cases that have touched the subject have not only so held, but, on requirement, have decided that in cases of indictment and conviction, the record itself may be introduced. It has been sometimes strenuously urged that, while an indictment or a conviction might be admissible, yet, where the fact is that the accused has been acquitted of the crime sought to be used as evidence, that fact should render it inadmissible, since to receive it would be to put the accused again in jeopardy and also to contravene the record. The courts which

have spoken upon the subject have all said, in substance, that the accused could not be put in jeopardy of a crime of which he had been acquitted, but that he was in jeopardy of the crime for which he was being tried; and that evidence of the transactions which had resulted in his acquittal was admissible if competent to show a fact material to the issue being tried; and that, as to the other objection, the particular ground of his acquittal was not matter of record, but matter of presumption only, which would be allowed only until the fact itself appeared; and that, under these circumstances, it could not be said that the record was contravened. Moreover, in some instances, such evidence has been held not barred by the Statute of Limitations." See, also, *People* v. *Lachuk,* 5 Cal.App.2d 729 [43 P.2d 579]; *People* v. *Spahn,* 28 Cal. App.2d 294, 297 [82 P.2d 474]; *People* v. *Berry,* 191 Cal. 109, 122 [215 P. 74]; *People* v. *Follette,* 74 Cal.App. 178, 212 [240 P. 502].

The final question in the case is whether the district attorney was guilty of prejudicial misconduct in continually asking questions which the court had ruled (although erroneously) inadmissible. Generally speaking, such conduct could constitute misconduct. Whether it does or not depends upon a number of circumstances, including the good faith of the prosecutor. In any event, such questions and offers of proof should be in the absence of the jury. (6 Wigmore on Evidence (3d ed.), § 1808.) Where the court has ruled that certain evidence is inadmissible, even though the court is wrong, to persist in repeating the same questions, even though in different form, gives the jury the impression that had the witness been permitted to answer, the answer would have been favorable to the prosecution. This leaves the defendant ordinarily in a helpless situation. He either has to leave that impression with the jury, or attempt to explain and thereby admit evidence which both the court and he believe to be inadmissible. It may be, too, that in such case, if the witness had been permitted to answer the question, his answer would have been the opposite of the one the jury would assume from the question itself.

Did the defendant here suffer prejudice by the conduct of the district attorney? The record shows that he did not. In the first place, the court, although at first sustaining objections to similar questions and even later again ruling similarly, did, on one occasion, admit the testimony, so that the

matter legally got before the jury. The answer of the witness showed that the district attorney was acting in good faith in his questioning. In the second place, the defendant was given the opportunity of presenting to the jury the only defenses he had to the testimony in view of the fact that he refused to take the stand, namely, that the three burglary charges testified to by the witness had been dismissed, and that the gun had not been used in the burglaries, but had only been present in the car which took defendant and the witness to and from the scenes of the crimes. These matters were brought out in the testimony of Ramos. It was for the jury to determine whether the fact that the charges had been dismissed weakened in any way the testimony of Ramos that the gun belonged to defendant.

It is interesting to note that at no time during the trial did the defendant at any time assign the action of the district attorney as misconduct. It has been held that where there has been no such assignment, the error, if any, will not be considered on appeal. (*People* v. *Webster*, 36 Cal. App. 540 [172 P. 768]; *People* v. *Brown*, 71 Cal.App. 181 [235 P. 72].) There is, however, an exception to that rule to the effect that where the misconduct, if any, is so prejudicial that an instruction to the jury could not cure it, this court will consider the matter even though no assignment was made in the lower court. However, that exception is unimportant here, for as we have pointed out, it is extremely doubtful if even without it the action of the jury would have been different. The court gave a full and fair instruction to the effect that the jury must draw no inferences from any questions asked to which objection was sustained, nor to statements made by counsel.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.