[Crim. No. 7213.   Second Dist., Div. Three.   Mar. 17, 1961.]

THE PEOPLE, Respondent, v. DELTON JOSEPH SKIPPER, Appellant.

Jack A. Otero, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

FORD, J.—Clifford Purvis Andrews and the appellant Skipper were accused of the crimes of grand theft and burglary. Skipper has appealed from a judgment of conviction of petty theft and burglary and from the denial of his motion for a new trial.

The contentions of the appellant relate to the propriety of the admission of certain evidence and of statements made by the assistant district attorney in his arguments to the jury. Pertinent portions of the record will be set forth or summarized herein.

Henry Graham was a coowner of a business in Carpinteria

known as Coastal Liquors. He testified that while he was in his store on December 18, 1959, the appellant entered. No other person was present. The appellant removed a bottle of soda from a cooler and took it to the counter. Mr. Graham asked him if there was anything else he wanted; the appellant answered that there was not. Mr. Graham recorded the sale on the cash register and reached for a half-dollar which the appellant had in his hand. Thereupon the appellant said, "Just a minute. I want some candy." The cash drawer was then open; therein was a substantial sum of money including about thirty-five $10 bills. Leaving the drawer open, Mr. Graham walked over to the candy stand with the appellant. The appellant dropped some coins on the floor and Mr. Graham picked up several which he returned to the appellant. But the appellant said that there was a dime still missing. The witness testified: "I kept looking for it, which I was on my hands and knees on the floor, and he kept chanting, 'Man, don't you see? There it is down there. Don't you see it? There it is. Get it.' " But Mr. Graham finally told the appellant that he could not find the coin, whereupon the latter said, "To hell with it. Forget it." Mr. Graham got up and then saw the codefendant Andrews. At the same time he saw a $10 bill in the place in the cash register where he kept coins and he said, "Somebody has been in my cash register." Andrews said, "Well, you see it wasn't me. You see where I am standing." The appellant walked over and put down 11 cents; he started to leave and bumped into Andrews. Andrews came over to the counter with a bottle of wine. Mr. Graham went to the door and wrote down the license number of the parked automobile which the appellant had entered. Andrews asked him what he was doing and, upon being told, said, "It don't make any difference to me. I don't know the man." When Andrews left the store, he entered the automobile into which the appellant had gone. The automobile was then driven away. About $290 was missing from the cash register, mainly in $10 bills. Later that day Officer Wire apprehended the two men together. Officer Burke testified that Andrews had in his possession nineteen $10 bills and Skipper had four $10 bills in addition to other money.

During the course of the trial, certain testimony given by Karl Gordon Wisely was admitted as against Andrews. The jurors were admonished that such evidence was not to be considered "in any way as reflecting upon any possible guilt of Mr. Skipper on the charges on which he is

being tried."[1] Moreover, the jurors were told that as to Andrews the evidence could be considered only for a limited purpose: "This evidence is not to be received as evidence of his guilt as such in this case that you are trying . . . but for the limited purpose of showing that he had some plan, some scheme, or some mode of operation which it might become important for you to consider with respect to his guilt or innocence in the charges which are now being considered by you." The Wisely evidence related to an incident in a grocery store in Summerland on June 27, 1959. A woman entered the store and looked at stockings. A man came in with a newspaper which he had taken from a rack just outside the door. He unfolded the paper and held it in an extended position in front of Mr. Wisely, thereby blocking his vision, and engaged him in conversation about the headlines for three or four minutes. Then the man directed Mr. Wisely's attention to some candy. As Mr. Wisely bent over towards the candy, the cash register was in back of him. He had opened the cash register drawer so as to make change for the newspaper sale and, when the customer made the request for candy, he did not close the drawer. While he was bent over, he heard the "click" of the metal rollers which held down the paper money. He then turned around and saw another man holding a bar of soap in his right hand and money in his left. That man was Mr. Andrews, the appellant's co-defendant in the present case. Mr. Wisely held on to Andrew's wrist until he released the money; it was $190 in bills of $5.00 and $10 denominations. The other man denied that he was with Andrews, but Mr. Wisely saw the woman and the two men enter an automobile which had been parked in an adjacent service station.

It is appellant's contention that "the introduction of the evidence concerning the Wisely theft deprived defendant [appellant] of a fair trial on the ground that the jury could not erase from its mind that Mr. Andrews had used a confederate in the Wisely theft in exactly the same manner that the prosecution argued Mr. Skipper was used in the alleged

[1] In addition, in the course of the instructions to the jury after the completion of the introduction of evidence, the court stated, in part, as to the Wisely evidence: "As you were admonished at the time this evidence was received, it is to be received only insofar as it throws any light upon the foregoing questions with respect to the defendant, Andrews, and the defendant, Andrews, alone and with respect to the defendant, Skipper, such evidence is to be treated as though you had never heard it."

theft at Mr. Graham's store.'' That contention lacks merit. The evidence was properly received as against the defendant Andrews because evidence of another crime committed by him showing a similar *modus operandi* was admissible as tending to identify him as the prepetrator of the crime for which he was then on trial. (*People* v. *George,* 169 Cal.App.2d 740, 745 [338 P.2d 240]; *People* v. *McCarty,* 164 Cal.App.2d 322, 326 [330 P.2d 484]; *People* v. *Ross,* 98 Cal.App.2d 805, 809-810 [221 P.2d 280].) The appellant is no more in a position to allege prejudicial error because of the admission of such evidence as against his codefendant than he is to assert error for a failure to grant him a separate trial upon his motion because of the anticipated use of such evidence. Of the latter situation, it was stated in *People* v. *Santo,* 43 Cal.2d 319, at page 332 [273 P.2d 249]: ''A defendant is not entitled as a matter of right to a separate trial. (See Pen. Code, § 1098.) A motion for a severance must be decided upon the showing made at the time of the making of the motion and not upon what may have transpired thereafter at the trial. (*People* v. *Pierson* (1934), 139 Cal.App. 734, 736 [34 P.2d 755].) *The judge admonished the jury to consider evidence which was admissible against only one defendant in connection with that defendant only. It is not necessarily an abuse of the trial court's discretion to refuse a motion for separate trials made on the ground that damaging testimony admissible against one defendant and not admissible against another may be received; in the absence of a strong showing to the contrary it is to be presumed that an instruction such as the one given here sufficiently protects the defendant. (People v. Isby* (1947), (30 Cal.2d 879, 897 [186 P.2d 405].)'' (Emphasis added.) See also *People* v. *Parker,* 122 Cal.App.2d 867, 871 [265 P.2d 933]; *People* v. *Bennett,* 93 Cal.App.2d 549, 551-552 [209 P.2d 417].) The admonition at the time the evidence was received and the instruction of the court, to both of which reference has been made, were adequate to protect the rights of the appellant under the circumstances. (See *People* v. *Simpson,* 170 Cal.App.2d 524, 532 [339 P.2d 156].) The appellant asserts that his request for a continuance of the trial until a later time, which was made in chambers during the discussion of the admissibility of evidence as to the Wisely incident, was erroneously refused. No abuse of discretion on the part of the court has been shown. Moreover, it appears to be clear that nothing could have been gained by such a continuance because, as has been noted, the evidence was

admissible for the limited purpose indicated by the trial court and because at the trial the defendant Andrews did not deny the Wisely incident.[2]

▉ Complaint is made by the appellant of the language of the assistant district attorney upon the subject of the Wisely evidence in his opening argument to the jury. Relevant portions thereof are set forth in the margin.[3] A motion for a mistrial because of such argument was denied, as was a motion that the jury be again admonished at that point as to the limited purpose of the evidence. In view of the guidance given

[2]In his argument to the jury, counsel for Andrews said: ''I have discussed it with my client and it is true that on the day in question—I think it was the 27th of June, or maybe it was the 25th—I don't remember now—in Summerland, he did take the sum of about $190.00. He was caught and he plead guilty to petty theft and he was imprisoned in the County Jail here in Santa Barbara for 90 days. He admitted it in open court, and he has been punished for it; so, when you approach this problem under the limiting instructions that the Court will later give you, you need not argue in your mind that Mr. Andrews has denied this, because he does not deny it.''

[3]''In regard to Mr. Andrews, I want to mention these other facts in conclusion here. . . . [Discussion of the Wisely evidence.] And that is highly coincidental with what happened in Graham's store, because in Graham's store, Mr. Andrews was in a corner of the store, and when Graham turned around, he had a bottle of wine in his hand; and in Wisely's store, he had a cake of soap in his hand, that he had also gotten from the far corner. And the man with the paper was used for the same purpose as Mr. Skipper was used, to distract the man in back of the counter from his open cash register, so that Andrews could slip around and get in the cash register—the same situation that Skipper was used for in Graham's store. It is also coincidental that in the Wisely transaction, the man, the distracter, the partner, the aider and abettor, was after candy, as he was in Graham's transaction. Skipper was after candy. In both transactions the candy was farthest away from the cash register. In Wisely's, it was at the end of the counter in position 3, and the candy was low down so Wisely had to put his hand low down, and in Graham's store, the same set-up; the candy was at the end of the counter, exactly the same set-up, and the only difference being, in the Graham transaction, Skipper, in addition to getting Graham away from the cash register while the drawer was open—he dropped the coins. . . . But in the Graham situation, they got away until they got to Ventura, but the same method of operation was used in the Wisely transaction as in the Graham transaction. But we do concede that in the Wisely transaction, Mr. Skipper was not with Andrews. Now, we concede that Mr. Andrews and Skipper are not on trial for the Wisely transaction—that is true—and it is true that this evidence was offered for a limited purpose and the Court stated at the time, as he will state it in his instructions, that it is offered for only certain purposes: to show common plan, scheme or design, as what bearing it may have on the intent of these people. Now, when they went into Wisely's store, they had the intent to steal that money, and we infer that from what happened and because of the similarity between the way Andrews operated in the Wisely transaction and in the Graham transaction—it is a reasonable inference that you can draw that they also had the intent to steal in the Graham store as Andrews stole in the Wisely store.''

the jury by the court as heretofore noted, we fail to see a sound basis for a claim of prejudicial misconduct on the part of the prosecutor under the circumstances. Although some of the language may have been inapt, the argument was not an invitation to the jurors to consider as against the appellant evidence which was only admitted as against Andrews or to disregard the instructions of the court.

The appellant also asserts that in his closing argument the assistant district attorney was guilty of "prejudicial misconduct when he used the evidence of a prior conviction of appellant, introduced for the sole purpose of impeachment, to show motive for the alleged theft." On cross-examination, the appellant said that he had been convicted in 1951 and again in 1954 "for the use of Heroin." The portion of the record which forms the basis for the appellant's contention is set forth in the margin.[4] A motive for a particular theft may, of course, be shown. (See *People v. O'Brand,* 92 Cal. App.2d 752, 754 [207 P.2d 1083].) However, even if evidence of a prior conviction of a narcotic offense, received for the purpose of the impeachment of a defendant who testifies as a witness on his own behalf, could under some circumstances sustain an argument to the jury as to motive (*cf. People v. Chambers,* 162 Cal.App.2d 215, 220-221 [328 P.2d 236]), the prior convictions of the appellant were rather remote in time for service as a basis of an inference as to the appellant's use of narcotics in December 1959. But, aside from the failure of the appellant to object to the argument on his own behalf or to request the court to admonish the jury to disregard the argument (see *People v. Lamendola,* 119 Cal.App.2d 570,

---

[4] "'Mr. Otero has mentioned this narcotic habit, this Heroin habit. Your common knowledge will tell you that a Heroin habit is an expensive habit. Did they have a $25.00 a day habit or a $50.00 a day habit, and where were they getting the money to satisfy the habit? MR. McMAHON: Mr. McCarthy, —— MR. McCARTHY: (Continuing) Do you think they were getting it shooting craps and playing poker? MR. McMAHON: If the Court please, there was no reference at all to Mr. Andrews, with regard to any habit or narcotics. THE COURT: In his own testimony on the stand, however, it has been brought out as to the prior, has it not? MR. McCARTHY: Yes, your Honor. THE COURT: And then the comments of Mr. Otero were brought out. MR. McCARTHY: Heroin use. THE COURT: It is a matter of argument. I think it is a matter of argument. MR. McCARTHY: I can argue that, your Honor, a matter of inference to the jury. Was he satisfying this habit by selling a wedding ring and a wedding band? What a travesty on a wedding ring and a wedding band that is. Or, was he getting his money from shooting craps and gambling, or was he going with his pals, whom he had known in institutions, to prey on the merchants in Carpinteria, as he did on the Coastal Liquor Store, in order to satisfy this Heroin habit?'"

573 [259 P.2d 982]), whether a prosecutor has been guilty of prejudicial misconduct must be determined in the light of the record in the particular case. (*People* v. *Lyons*, 50 Cal.2d 245, 262 [324 P.2d 556].) While we do not approve of the argument made by the prosecutor, an examination of the record has brought us to the conclusion that it is not probable that any different verdict would have been reached had the argument not been made. Consequently, the argument does not constitute a ground for a reversal in this case. (*People* v. *Lyons, supra,* 50 Cal.2d 245, 265; *People* v. *Watson,* 46 Cal. 2d 818, 835-836 [299 P.2d 243]; *cf. People* v. *Ramirez,* 143 Cal.App.2d 554, 557 [300 P.2d 106].)

Under the circumstances of this case, it was proper to find the appellant guilty of both burglary and theft. (See *People* v. *Guarino,* 132 Cal.App.2d 554, 559 [282 P.2d 538].) The record discloses no reversible error.

The judgment and the order denying the motion for a new trial are affirmed.

Shinn, P. J., and Vallée, J., concurred.