[Crim. No. 1719. Fourth Dist. Jan. 2, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. HARVEY SHANNON, Defendant and Appellant.

David C. Marcus, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

GRIFFIN, P. J.—Defendant-appellant Harvey Shannon, with his codefendant Joe William Sawaya, was convicted by a jury on a charge of grand theft, in that they took a tube caddy carrying about 500 tubes and other paraphernalia estimated to cost from $1,500 to $3,000, from a television company. Motions for new trial were denied and defendants were sentenced to prison. ▮▮ Each appealed from the judgment and order denying new trial, which latter order is not appealable. (*People* v. *Eppers,* 205 Cal.App.2d 727 [23 Cal.Rptr. 222].) The appeal by defendant Sawaya was dismissed on July 11, 1962.

It is the claim of appellant Shannon: (1) that the evidence was insufficient to support the charge; (2) that there was error in admitting evidence of other crimes; (3) that improper instructions were given; and (4) that there were prejudicial statements by the prosecutor to the jury.

On May 18, 1961, about 3:50 p.m., a television repairman parked his repair truck in front of a home at 10401 Ashdale Street, near Stanton, Orange County, went inside for a few minutes, and on his return found his tube caddy missing. The complaining witness did not see defendants take it. A nearby neighbor was seated in the window of her home across the street and saw a car stop by the truck. It left and then returned a second time, and she saw a person she later said looked like defendant Sawaya get out on the passenger side of the car. The witness testified that he went to the truck and took something which appeared to be a large suitcase out of the truck, put it in his car and quickly drove away; that she noticed Sawaya walked with a limp and she described him as tall and heavy, and as the car passed her house she went out and noticed the driver had his hand over his face. She said he wore a straw hat, his hair was gray, he was dark complexioned and was a short individual. On the witness stand, she compared appellant to the man she saw and said that he appeared to be identical to the man she saw on that occasion. She testified that the straw hat in evidence looked like the straw hat he wore. She was shown pictures of a 1960 Chevrolet and she said it was green and similar to the one that was driven by the thieves on that occasion.

Her husband corroborated her testimony and added that

he knew what a tube caddy was; that Sawaya jumped into the front seat of the green car and the car started to leave; that as it did he checked the license number and, from the angle he saw it, he recorded it as looking like JEK-935 or JFK-935, and the car was a 1959 or 1960 green four-door stock model Chevrolet. Evidence was subsequently introduced that appellant had been known to drive a green 1960 Chevrolet bearing license number UEK-915. The witness's husband positively identified Sawaya as the passenger. He described appellant Shannon as short and, from his hair, he believed him to be middle aged or elderly, and he said he saw nothing inconsistent between the driver as he then observed him and his countenance as he observed it at the trial. He said that the hat in evidence was identical to the one he saw the driver wearing on that occasion. The number of the car and its description and the facts above-related were reported to the police. Sawaya was later identified at a lineup at the jail as one of the occupants of the car. The witnesses stated that he was about 6½ feet tall, weighed about 200 pounds and limped in his right leg. The officers, armed with a warrant, arrested appellant at his home. According to their testimony, appellant pointed out his car to them. It was a 1960 foam green four-door Chevrolet sedan bearing license number UEK-915, but due to some dust or mud on the license plate, the "U" looked like a "J." Photographs were taken of it and exhibited to the jury. Appellant said that he was the only one who drove the car other than his stepdaughter's boy friend, who was about 17 years of age and nearly 6 feet tall. As they went downstairs, appellant grabbed a straw hat, which was received in evidence. It was a Mexican hat, identified by the witnesses as the same type as that worn by the driver of the thieves' car. During a search of the Chevrolet, a television tube was found behind the left wheel well in the trunk; a small piece of television wiring and a piece of plastic used in connection therewith were found under the spare tire.

The officers testified that in a later conversation with appellant, they asked him if he ever carried any radio equipment or television tubes in his car and he said "No." He said he did know Sawaya and that he went to the races at Del Mar with him. He first denied being at Oceanside, but after questioning he stated that the Oceanside officers did stop them when they were on their way to the Del Mar Race Track; that both denied knowing anything about the theft of a tube caddy in Stanton; said that they didn't know where they were

on the date of that theft and denied ever being in or around Stanton and said they did not even know where Stanton was. The officers testified that defendant Sawaya does walk with a limp and that after investigation they found that there did not exist a license plate lettered JFK-935 or JEK-935; that the description of the driver of the Chevrolet on the occasion of the theft in Stanton was given by the witnesses as a small man, dark complexioned, with gray hair, and wearing a straw hat. Defendant, who was 67 years old, fitted this description.

The prosecution produced certain evidence in reference to circumstances involving other crimes, over objections, as bearing on the question of identity, common scheme, plan and design, claiming the right to do so under *People* v. *Shannon,* 28 Cal.App.2d 677 [83 P.2d 302] ; *People* v. *James,* 40 Cal. App.2d 740 [105 P.2d 947] ; *People* v. *Hunter,* 49 Cal.App.2d 243 [121 P.2d 529] ; *People* v. *Sanchez,* 35 Cal.App.2d 231 [95 P.2d 169] ; and Fricke, California Criminal Procedure (5th ed.) page 293.

One Arthur Robinson testified that he had a television business in Orange; that on April 27, 1961, he had a tube caddy stolen from his truck parked at the back of his store in a cul-de-sac alley; and that he contacted one Elmer Reed, next door, about the theft. Reed testified that he had observed a vehicle stopped by Mr. Robinson's truck about 30 minutes prior thereto and that a man who looked exactly like Sawaya, a big fellow, about 6 feet tall, was standing by an older model (1950) car, possibly an Oldsmobile or a Buick, and that there was another smaller person in the driver's seat. Reed said that he thought the car was stalled and asked if they wanted him to push it, and the man resembling Sawaya jumped back into the car and they hurriedly drove off; that later he observed Sawaya in the lineup in the jail and identified him as the person who was outside the car when it was parked near the Robinson truck.

One Paul Johnston, who operated a television shop in Oceanside, testified that on August 29, 1961, he owned a pick-up truck, used for television repair work, which was parked in an alley behind his store; that shortly after 8 :30 a. m., he observed a car approaching it down the alley, with two men in it, and it stopped near his truck; that the doors to his truck were locked and the keys to them were left in the ignition; that one man got out of the car, walked around, looked about, and then approached Johnston's truck, and then returned to

the car and said to the driver, "The door is locked, but the keys are inside," and that Sawaya tried to open the truck doors. Johnston had two tube caddies in his truck. He testified that apparently Sawaya saw Johnston and pretended to be kicking the rear wheel of his car, which was a 1959 or 1960 olive green colored sedan Chevrolet model with license plate labeled "Felix Chevrolet"; that Sawaya got into the car and it proceeded down the alley; that he (Johnston) took down the license number, which was UEK-915. The license plate of appellant's car bore the name "Felix" on it. He (Johnston) identified defendant Sawaya as the man who got out of the car that day. He said that the appellant Shannon "looks like this gentleman here [Shannon]," but he said he had a hat, "sort of a straw hat" on at the time, such as exhibit 3 in evidence. The driver appeared to be dark in color, on the elderly side and small in appearance.

A police officer in Oceanside was called in reference to the car having the license number UEK-915 and he found it about eight blocks away, stopped, and appellant Shannon was in the driver's seat and defendant Sawaya was with him. He inquired of them if they had been in the rear of the television repair shop and they said no, but that they had pulled off the main highway into an alley to check a tire and that they were going to the Del Mar Race Track. The trunk of the car was searched and it appeared to be "clean," so defendants were allowed to proceed.

### Defense

In defense, appellant Shannon's wife testified that she, appellant and their children went to Mexico City in their car and returned on April 24, 1961, at about 11:30 at night and she exhibited vaccination cards bearing that date; that they continued on to Los Angeles on April 26, and that appellant stayed home all day and night on April 27.

Appellant Shannon did not testify in his own defense.

Defendant Sawaya testified that he had no recollection of what he did on April 27, 1961, but that he was not in the City of Orange on that day nor in Orange County; that he had a leg injury and does limp from a shortened leg; that on August 29, 1961, he and Shannon were passing through Oceanside, drove into an alley on Mission Street looking for a place to eat, and that an officer stopped them and asked what they were doing alongside a television repair truck; that the officers searched their car; that he told them he knew nothing about it and asked to have them let him go; that on June 2, 1961,

he was arrested by Orange County officers and returned to Stanton and booked on this charge, which is alleged to have happened on May 18; that he had not worn a mustache for 20 years and knew nothing about the grand theft charges in Stanton. He said that he was about 6 feet 3 inches in height and that he weighed about 328 pounds and was unemployed and played the races in Hollywood, Delmar and Pomona on many occasions.

A mere recitation of the facts and circumstances, together with the failure of the accused to testify, clearly implicates defendant Sawaya and appellant Shannon with the theft charged in the information. (*People* v. *Richardson,* 81 Cal.App.2d 866, 870 [185 P.2d 47] ; *People* v. *Spellings,* 141 Cal.App.2d 457, 460 [296 P.2d 889] ; *People* v. *Waller,* 14 Cal.2d 693, 700 [96 P.2d 344] ; *People* v. *Yates,* 165 Cal. App.2d 489, 494 [332 P.2d 314] ; *People* v. *Martell,* 197 Cal. App.2d 195, 197 [16 Cal.Rptr. 918] ; *People* v. *King,* 199 Cal. App.2d 333, 338 [18 Cal.Rptr. 624] ; *People* v. *Adamson,* 27 Cal.2d 478 [165 P.2d 3].)

### OTHER OFFENSES

The evidence as to the actions and conduct of defendants and as to their presence in Oceanside and in Orange was admissible, under proper instructions, against defendants as bearing upon their identity, common plan, scheme and design. Appellant does not appear to contest the fact that the acts committed were similar or that similar crimes would not be relevant in providing identity as the perpetrators of the crime charged. His contention is that he was not related to the prior crimes and that the evidence was not received with the extreme caution required by *People* v. *Albertson,* 23 Cal.2d 550 [145 P.2d 7]. There was a strong identity of appellant's codefendant Sawaya. The evidence would be admissible as to Sawaya even if it were uncontested that appellant was not involved in either crime. (*People* v. *Skipper,* 190 Cal.App.2d 206, 208 [11 Cal.Rptr. 681].) Appellant never requested that the evidence be limited to Sawaya. The burden is on the party seeking a limiting instruction to request it. (*People* v. *McGoldrick,* 107 Cal.App.2d 171, 174 [236 P.2d 597] ; *Adkins* v. *Brett,* 184 Cal. 252, 258 [193 P. 251] ; *People* v. *Ashcraft,* 138 Cal.App.2d 820, 827 [292 P.2d 676].) As to the occurrence in Oceanside, it seems fairly clear from the evidence that the appellant was there. The license number of his car was taken down; he was found

several blocks away with a man identified as the person who got out of his car. The other offense established the taking of a tube caddy. Sawaya was identified at the scene. There was another man there who was small and dark complexioned. It would appear that Sawaya's identification in three consecutive thefts of tube caddies, twice with a strong indication of appellant's presence, supports the reasonable inference that appellant may have been the man this third time. The evidence was admissible. The prosecution need not prove the element of identity beyond a reasonable doubt in establishing other crimes. It is sufficient if it is made out by a preponderance of the evidence. (*People* v. *Lisenba*, 14 Cal.2d 403, 429 [94 P.2d 569].)

## INSTRUCTION

 Even if it could be said that the evidence as to appellant's presence in Orange was not sufficiently established, no request was made for an instruction limiting its effect to defendant Sawaya. (*People* v. *Brown*, 168 Cal. App.2d 549, 554 [336 P.2d 1].) The court gave a proper instruction, to the effect that:

"Such evidence was received for a limited purpose only; not to prove distinct offenses or continual criminality, but for such bearing, if any, as it might have on the question whether the defendants are innocent or guilty of the crime charged against them in this action.

"You are not permitted to consider that evidence for any other purpose, and as to that purpose you must weigh such evidence as you do all other in the case.

"The value, if any, of such evidence depends on whether or not it tends to show—

" (1) the identity of the person who committed the alleged crime in question in this case, if it was committed; or

". . . . . . . . . . .

" (6) that there existed in the mind of the defendants a plan, scheme, system or design, into which fitted the commission of the offense for which they are now on trial."

In the absence of any other proffered instruction or for amplification on the subject, this was sufficient. (*People* v. *Brown, supra,* 168 Cal.App.2d 549.)

## ARGUMENT

 Appellant next contends that the prosecution was guilty of prejudicial misconduct in making certain remarks to the jury in reference to defendants being persons who fol-

low the races and accordingly their character may well be questioned and that it may indicate that it was necessary for them as unemployed persons to steal. Many of the remarks may well have been left unsaid. They had no place in a legitimate argument. None of the argument drew an objection from defendants' counsel at the time. Part of the argument consisted of a series of such statements made throughout the entire argument. Had appellant interposed an objection at an early stage, no doubt the court would have admonished counsel in this respect. Instead, counsel for defendants proceeded to answer this part of the argument by stating that the mere fact that a person plays the races does not indicate that he is a thief. There was some basis for the argument that defendants had no business betting on horse races with no visible means of supporting both their families and the horses while being unemployed. Under the circumstances, we do not believe these remarks were sufficiently prejudicial to warrant a reversal. It appears that the appellant had a fair trial. (*People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243]; *People* v. *Travis,* 129 Cal.App.2d 29, 30 [276 P.2d 193].)

Attempted appeal from order denying new trial dismissed. Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.