[Civ. No. 10454.   First Appellate District, Division Two.—April 23, 1937.]

CHARLES L. TOULI et al., Respondents, v. SANTA CRUZ COUNTY TITLE COMPANY (a Corporation) et al., Appellants.

Frederick W. Docker, George G. Graham, Harry J. Bias, W. A. Deans, Stoney, Rouleau, Stoney & Palmer and Royal E. Handlos for Appellants.

Wyckoff, Gardner & Parker for Respondents.

Allard, Holbrook & White, Joseph A. Allard, Jr., Edward D. Landels, and Morrison, Hohfeld, Foerster, Shuman & Clark, as *Amici Curiae* on Behalf of Appellants.

NOURSE, P. J.—Plaintiffs sued in equity to declare a deed of trust revoked, to require the trustees to reconvey, and to restrain the enforcement of the deed and the sale of the real property covered by it. The defendants answered separately, alleging that the note which the deed secured had not been paid, that both were executed on November 15, 1933, the deed to secure a loan of $7,500, and that no payments thereon had been made since October, 1934. The defendant Koch pleaded specially that the original payee of the note sold to one Turner, who then sold to this defendant; that before the last sale the plaintiffs herein warranted and assured this defendant that it was the intention of the parties at the time of the execution of the documents to make the deed security for all its several terms until final payment had been made upon the obligation, and that it was the purpose of the. plaintiffs to carry such intention into effect. It was further alleged that the defendant title company accepted the trusteeship under the deed as a matter of business with the purpose of carrying out the terms thereof and not as a matter of personal confidence. From the complaint it appears that notice of default was duly given on February 26, 1935, and that the plaintiffs followed this with a written notice of revocation of the trust on March 30, 1935. Upon these pleadings the plaintiffs moved for judgment. The motion was granted and judgment was entered decreeing that the trusts were terminated by the notice of revocation, that the trustee be required to reconvey and that the defendants should be permanently restrained from selling any of the property covered by the trust deed.

The judgment must be reversed for these reasons:

(1) Section 2280 of the Civil Code, which permits the revocation of a trust "unless expressly made irrevocable

by the instrument'' relates only to a ''voluntary'' trust created without a valuable consideration passing to the trustor, and does not apply to a deed of trust giving as security for the payment of an obligation. This follows from a consideration of the legislation as a whole. The original section was based on Field's Draft of the New York Civil Code, section 1209, and was enacted in 1872 when a deed of trust such as that involved here was ''both in legal effect and in theory'' deemed to be a mortgage with a power of sale and differed ''not at all from a mortgage with a power of sale''. (*Bank of Italy Nat. T. & S. Assn.* v. *Bentley,* 217 Cal. 644, 654 [20 Pac. (2d) 940].) The expression ''voluntary'' trust was first used in the section when it was redrafted by the amendment of 1931. At that time the distinction between an ordinary express trust and the common deed of trust given as security for an obligation was clearly defined in the California decisions and was well known to the lawmakers. A voluntary trust was defined in section 2216 of the Civil Code as ''an obligation arising out of a personal confidence reposed in, and voluntarily accepted by, one for the benefit of another''. But this section was also enacted in 1872 and was based upon Field's Draft of the New York Civil Code, and hence the legislature could not have had in mind a trust identical to ''a mortgage with a power of sale''. Webster's New International Dictionary under the heading ''voluntary-law'' gives this definition: ''Acting, or done, of one's own free will without valuable consideration, acting, or done, without any present legal obligation to do the thing done.'' It was in the latter sense that the word ''voluntary'' was used in the amended section, otherwise it would not have been coupled with the word ''revocable'' without reservation. The word ''revoke'' literally means to ''call back''. It is synonymous with ''rescind'', to ''recall'' and ''to cancel''. It does not mean ''repudiation''. A deed of trust given to secure an obligation is a contract, the right to rescind which is granted and limited by express provisions of the Civil Code to which we will hereafter refer. It must follow, therefore, that when section 2280 was drafted to permit the revocation of a ''voluntary'' trust, that expression was not used in the broad sense found in section 2216, but in the restricted sense of a trust created freely and without a valuable consideration or legal obligation. Otherwise the legislature would have restricted the revocation, or rescission, to the

general equitable safeguards placed upon mortgages and contracts in general.

This view is fortified by a consideration of the structure of the code in which these sections appear. Section 2280 is a part of article V of chapter 2 of the article on trusts. Section 2250, which is in article I of that chapter reads: "The provisions of this chapter apply only to express trusts, created for the benefit of another than the trustor, and in which the title to the trust property is vested in the trustee; not including, however, those of executors, administrators, and guardians, as such." A deed of trust such as we have here is created for the benefit of the trustor and the named beneficiary. (*Humboldt Sav. Bank* v. *McCleverty,* 161 Cal. 285, 290 [119 Pac. 82]; *Ainsa* v. *Mercantile Trust Co.,* 174 Cal. 504, 510 [163 Pac. 898]; *Atkinson* v. *Foote,* 44 Cal. App. 149, 156 [186 Pac. 831]; *Kellum* v. *San Mateo County Title Co.,* 127 Cal. App. 276, 279 [15 Pac. (2d) 876]; 25 Cal. Jur., pp. 11, 12, 42.) The author in California Jurisprudence at page 11 correctly concludes that the ordinary deed of trust "is not, therefore, governed by the chapter of the Civil Code beginning with section 2250, as that refers to those trusts which are entirely for the benefit of third persons, wherein the title wholly passes to the trustee, there being nothing to be done for the benefit of the trustor—nothing left in or to be returned to him." Hence, a deed of trust given as security for an obligation is not a trust "created for the benefit of another than the trustor", but is one created for the benefit of the trustor as well as for the benefit of the named beneficiary.

(2) The legislature must have had in mind numerous decisions relating to the nature and legal effect of deeds of trust of this kind and the holdings that, except for the passage of title for the purpose of the trust, such deeds are practically and substantially only mortgages with a power of sale, and that they differ from mortgages in that title actually passes to the trustee, whereas, in the case of mortgages a lien only is created. These cases are reviewed in *Bank of Italy Nat. T. & S. Assn.* v. *Bentley,* 217 Cal. 644 [20 Pac. (2d) 940], and further citation here is not necessary. It is sufficient that the similarity of mortgages and deeds of trust of this nature was well known to the lawmakers, and that the fundamental difference between such deeds of trust and those trusts referred to in section 2250 et seq. of the Civil Code was equally

well known. We draw this deduction from the fact that throughout the codes the latter are referred to and treated separately as "trusts", whereas, the former are referred to as "deeds of trust" or trusts "to secure the performance of an obligation" and are treated in the same sections with mortgages. (Civ. Code, secs. 2924 et seq., 3265; Code Civ. Proc., secs. 692, 694; Probate Code, secs. 830, 1538.) No reason is apparent why a debtor under a deed of trust should be permitted to destroy the lien securing his debt while the same privilege is not given to the debtor under a mortgage. If section 2280 is susceptible of the construction urged by respondents, then such construction would inevitably lead to absurdity, dishonor and fraud. Such construction is not to be preferred to one "consisting of sound sense and wise policy", and fair practice. (*In re Haines,* 195 Cal. 605, 613 [234 Pac. 883].)

■ (3) The judgment is condemned by the uniform rule that one is not entitled to relief in a court of equity who refuses to do equity on his part. In *Shimpones* v. *Stickney,* 219 Cal. 637, 649 [28 Pac. (2d) 673], it is said: "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured. (See a long list of cases sustaining the equitable rule as variously applied collated in 10 Cal. Jur., p. 512 et seq.) It was clearly erroneous to quiet her title under the circumstances of her refusal to do equity." The plaintiffs admittedly failed to meet their obligation in the transaction, and made no offer to pay the amount due. They sought and obtained judgment revoking and terminating the trust deed, requiring a reconveyance of full and clear title to the property, and had an injunction restraining enforcement of the lien. All this was had without any offer to restore any part of the consideration received by them. The effect of the judgment is much the same as the decree quieting title in the Shimpones case. It is contrary to the accepted principle that he who seeks equity must do equity. It is also contrary to law.

■ The deed of trust is a contract wherein mutual obligations are imposed upon the trustor, the trustee, and the beneficiary. If section 2280 could be applied on any theory to such a deed of trust, the revocation permitted by that section is nothing more than a rescission of this contract. As such it is controlled by the provisions of section 1689 et seq. of the Civil Code and particularly by the provisions of section 1691, subdivision 2, declaring that the actor must "restore

to the other party everything of value which he has received from him under the contract.''

The judgment is reversed.

Sturtevant, J., and Spence, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 21, 1937.