[Civ. No. 21495. First Dist., Div. Two. April 20, 1964.]

WELLS FARGO BANK AMERICAN TRUST COMPANY, Plaintiff and Respondent, v. WILLIAM M. GREUNER, Defendant and Appellant; ROBERT W. GREUNER et al., Defendants and Respondents.

Gilmore & Lewis and Richard C. Lewis for Defendant and Appellant.

**456**

Heller, Ehrman, White & McAuliffe and Lawrence C. Baker for Plaintiff and Respondent.

Paul S. Jordan and James L. Meegan for Defendants and Respondents.

AGEE, J.—Defendant William M. Greuner, Jr., appeals from that portion of the judgment which holds that the trust involved herein was revocable only during the lifetime of his father, William M. Greuner, Sr.

The latter owned seven insurance policies issued upon his life. On May 24, 1932, he assigned these policies to appellant under an oral agreement with him that he in turn would assign them to Wells Fargo Bank in trust for the benefit of Greuner, Sr.'s family. Appellant gave no consideration for such assignment nor did he at any time pay any of the premiums on the policies.

On September 30, 1932, a trust agreement in terms approved by Greuner, Sr., was executed by appellant as trustor and the bank as trustee. Appellant assigned the policies, which totaled $110,000, to the bank as such trustee.

Appellant is the oldest of the five children of Greuner, Sr., and his wife Louise. At the time of the creation of the trust he was 22 years of age and still in college.

On February 8, 1934, Greuner, Sr., died and the policies matured. The bank thereafter held the money proceeds and the assets into which they were transmuted as the trust estate.

On September 21, 1960, appellant gave written notice to the bank that he thereby revoked the trust. The bank then commenced this action in declaratory relief to determine whether the trust was revocable by appellant, as trustor, *after* the death of his father. The beneficiaries appearing herein are divided on the issue.

The controversy is centered upon paragraph 7 of the trust agreement. It reads as follows: "7. The Trustor shall have the power at any time during the lifetime of William M. Greuner, father of the Trustor, by an instrument in writing delivered to the Trustee, to modify, alter, revoke or terminate this agreement in whole or in part and to withdraw any policies or to surrender the same for the surrender value thereof or for other policies or other insurance or to borrow money thereon, and after the death of the Trustor the foregoing powers shall be vested in Philip P. Greuner, brother of the Trustor, or in the event he shall not then be living or

upon his subsequent death, Louise P. Greuner, mother of the Trustor, shall be vested with said powers. Except as to revocation of this agreement in whole or in part in accordance with the provisions of this paragraph, or the withdrawal or surrender of policies or the borrowing of money thereon or the withdrawal in whole or in part of other assets of the trust estate, the duties, powers and liabilities of the Trustee hereunder shall not be substantially changed without the written consent of the Trustee; from and after the death of the last survivor of the Trustor, said brother of the Trustor and said mother of the Trustor, this agreement shall be irrevocable and otherwise incapable of modification.''

*Issue*: Does this paragraph *by its terms* confer upon appellant the power to revoke the trust *after* the death of his father? *No.*

Under the first sentence of the paragraph, the powers therein conferred upon appellant as trustor, including that of revocation, are expressly limited to the period of his father's lifetime.

Under that part of the second sentence which precedes the semicolon, the bank's duties and liabilities during such period (except in the respects specified) cannot be substantially changed without its written consent.

The obvious purpose of this requirement is to protect the bank against duties and liabilities which might be imposed upon it as the result of a modification or alteration of the trust agreement by appellant, acting under the powers given to him under said first sentence.

This provision in the second sentence clearly relates to the first sentence and, like it, is applicable only to the period of the father's lifetime.

That part of the second sentence after the semicolon names the same three persons as were named in the first sentence, to wit, appellant, appellant's brother, and appellant's mother. It provides that the powers conferred under the first sentence are terminated upon the death of the last survivor of these three.

Since these powers, as we have seen, are limited to the father's lifetime, the second part of the second sentence must also be held to relate only to this limited period.

Paragraph 7 must be construed as a whole, each of its two sentences must be construed together, and the latter part of the second sentence should not be separated from either the other part of the same sentence or from the first sentence

so as to make it refer to any period other than that to which said first sentence and the first part of the second sentence relate.

Our interpretation of paragraph 7 is as follows: the bank recognizes thereby that *during the lifetime of the father*, the trust agreement could be modified, altered, revoked or terminated in whole or in part; but this would have to be done by appellant or, if he predeceased his father, by appellant's brother, or if this brother also predeceased the father, by appellant's mother if she survived the father. These were the only three persons who were authorized to so act during this period.

In the event that all three of these persons predeceased the father, then the trust agreement became irrevocable and incapable of modification during the remainder of the father's lifetime. There was, obviously, very little likelihood of this occurring and, in fact, it did not.

It is apparent that the principal purpose of paragraph 7 was to make it absolutely clear that the insurance policies could be withdrawn from the trust and cashed in or borrowed upon *"at any time during the lifetime"* of the father. (Italics ours.)

To this end the paragraph designated the persons who were empowered to so "modify, alter, revoke or terminate this agreement in whole or in part. . . ."

However, again we say that these powers were limited to the period of the father's lifetime. Hence, we conclude that paragraph 7 applies only to such period and that it did not *by its terms* empower the appellant to revoke the trust at any other time, i.e., the period following the father's death.

*Issue:* Does paragraph 7 *expressly* make the trust irrevocable *after* the death of the father and thus exclude the trust agreement from the application of the provisions of section 2280 of the Civil Code? *No.*

This section provides in relevant part as follows: "Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor by writing filed with the trustee."

The only *express* provision in the trust agreement as to *irrevocability* is that, in the event that the appellant, his brother, and their mother all predecease the father, then the trust shall be irrevocable during the period remaining between the death of the last survivor of these three persons and the death of the father.

On the other hand, the only express provision in the trust agreement as to *revocability* is that which allows appellant or one of the alternates to revoke the trust at any time during the lifetime of his father.

The bank contends ''that a trust which may be revoked by A during the lifetime of B is equivalent to saying that the trust may not be revoked by A after B's death.'' However, this contention overlooks the force of the requirement in section 2280 that, to accomplish this result, there must be a provision in the trust agreement *expressly* making the trust irrevocable. This was not done.

In *Fernald* v. *Lawsten,* 26 Cal.App.2d 552 [79 P.2d 742], the trust agreement provided that the trustee was to hold the trust estate as such trustee during the lifetime of the trustor, ''unless otherwise agreed upon in writing by the parties hereto.'' The trustee contended that this made the trust irrevocable unless revocation was effected in the manner provided for in the trust agreement.

The court stated: ''The trust agreement contains no express provision that it is to become irrevocable. It is expressly provided that the trust shall become revocable when 'agreed upon in writing by the parties thereto.' This does not affirmatively declare the trust may not be otherwise terminated. Since the document is not expressly made irrevocable, it may be revoked in the manner provided by section 2280 of the Civil Code.'' (P. 560.)

It is true that the above cited case was concerned with the *method* of revocation and not with the *period* during which revocation could be effected. But the holding therein is that, *unless* the trust agreement *affirmatively* declares that the trust is irrevocable, section 2280 is applicable to a voluntary trust.

In *Newman* v. *Commissioner of Internal Revenue,* 222 F.2d 131, it was contended that the trust was not revocable because none of the contingencies expressly listed in the trust agreement which would cause a termination of the trust had occurred. The court held that the agreement did not create an irrevocable trust under California law because it was not '' 'expressly made irrevocable by the instrument creating the trust,' '' citing section 2280 of the Civil Code of California. (P. 133.)

The court defined ''expressly,'' as used in said section, as ''distinctly, clearly, unmistakably, or in direct terms, as distinguished from impliedly or inferentially.'' (P. 135.)

We hold that the trust did not become irrevocable upon the death of the father.

*Issue*: Is the trust a "voluntary trust" within the meaning of section 2280 of the Civil Code? *Yes*.

Section 2215 of the Civil Code classifies trusts as either "voluntary" or "involuntary." Section 2216 of the Civil Code defines a voluntary trust as "an obligation arising out of a personal confidence reposed in, and voluntarily accepted by, one for the benefit of another." Section 2217 of the Civil Code defines an involuntary trust as "one which is created by operation of law."

The bank contends that the instant trust was an involuntary trust as to appellant because he was under a *legal obligation* to his father to create the trust.

■ The following statutory provisions indicate that a voluntary trust is usually one which is created by express agreement, whereas an involuntary trust is one which is imposed independently of or in the absence of such an agreement.

Section 2221 provides in pertinent part that "a voluntary trust is created, as to the trustor and beneficiary, by any words or acts of the trustor, indicating with reasonable certainty: 1. An intention on the part of the trustor to create a trust, and, 2. The subject, purpose, and beneficiary of the trust."

Section 2222 provides in pertinent part that "a voluntary trust is created, as to the trustee, by any words or acts of his indicating, with reasonable certainty: 1. His acceptance of the trust, or his acknowledgement, made upon sufficient consideration, of its existence; and, 2. The subject, purpose and beneficiary of the trust."

On the other hand, the nature of an involuntary trust is indicated by section 2223, which provides that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner," and section 2224 provides that "[o]ne who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

■ An involuntary trust, as distinguished from a voluntary trust, is one where the intention of the parties is not expressed and such intention is therefore implied by law (resulting trust) or is one which is imposed by law regardless of

intention (constructive trust). (4 Witkin, Summary of Cal. Law, p. 2887.)

In support of its contention, the bank relies upon *Touli* v. *Santa Cruz County Title Co.*, 20 Cal.App.2d 495 [67 P.2d 404]. That case involved a deed of trust used as a security device instead of a mortgage. As pointed out therein, section 2280 ''does not apply to a deed of trust giving (*sic*) as security for the payment of an obligation.'' (P. 497.) The decision further expressly holds that a deed of trust is not governed by the chapter which contains section 2280. (§§ 2250-2289.) (Pp. 498-499.) Lastly, the court holds that when the Legislature amended section 2280 in 1931 to add the provision that ''every voluntary trust shall be revocable,'' it must have had in mind the kind of a voluntary trust which is defined in section 2216.

█ It seems clear to us that the trust created herein under the trust agreement executed on September 30, 1932 is a ''voluntary trust'' within the meaning of section 2280.

█ *Issue*: Is appellant the ''trustor'' within the meaning of section 2280 of the Civil Code? *Yes.*

The bank contends that the father was the ''true trustor'' because he ''furnished all of the consideration'' and therefore ''was the only person who would be entitled to exercise the power conferred by Section 2280. . . .''

This contention overlooks the fact that it was the father himself who selected the appellant to act as trustor. The trial court found that he agreed that his son should transfer the policies to the bank to be held by it in trust ''on terms and conditions satisfactory to said William M. Greuner, Sr.'' The court further found that the trust agreement was ''made and executed by and between said, defendant William M. Greuner [appellant] as trustor and said Wells Fargo Bank & Union Trust Co. as trustee, the terms and provisions of which were satisfactory to said William M. Greuner, Sr.''

While the trial court concluded that the father ''was the true trustor of said trust and was the only one who could revoke said trust agreement,'' there was no finding that there was any agreement between any of the parties to this effect.

█ The reasoning of the trial court apparently is that one who provides the consideration for a trust estate thereby becomes the trustor of that trust *despite* an express provision in the trust agreement, consented to and approved by him,

that another is to act in such capacity. We do not agree with this.

The trust agreement actually *divests* the father of any power to revoke the trust during his lifetime. It confers this power upon the appellant, his brother and their mother in that order. It is then provided that, in the event that none of these three survive the father, the trust shall become *irrevocable* during the remainder of the father's lifetime. Thus, the father expressly precluded himself from *ever* becoming a "trustor" entitled to exercise the right of revocation under section 2280.

The trial court rejected the uncontradicted testimony of appellant that he and his father had agreed that appellant was to continue to have the power of revocation after the father's death. It held that "[s]aid trust agreement is unambiguous" and that "all oral agreements and understandings between ... [father and son] entered into prior to the execution of said agreement ... were accordingly merged into and superseded by said agreement upon the execution thereof."

Thus, assuming the correctness of the trial court's ruling in this respect, the following well established rule is applicable: "Where no competent extrinsic evidence has been introduced, and the interpretation is derived solely from the terms of the instrument, the appellate court is not bound by the trial judge's construction, even though it may be permissible and reasonable. The question is one of *law*, and the appellate court will give the writing a different interpretation if this appears to be more reasonable." (3 Witkin, Cal. Procedure, p. 2253, and cases cited.)

We have concluded that the proper and reasonable interpretation of the trust agreement, without the aid of the uncontradicted testimony to the same effect, is that the appellant was intended to be and he is the trustor within the meaning of section 2280 and, as such, was empowered to revoke the trust after the death of his father.

The beneficiaries are divided on the issue of revocation. They are also divided as to what should be done with the trust estate in the event that appellant's power to revoke is upheld.

Appellant and those beneficiaries supporting his position have, by their pleadings filed herein, proposed one plan. Four grandchildren and one son (Robert) have filed pleadings which propose a different plan.

The trial court did not determine this latter issue, stating that it was unnecessary to do so in view of its determination that the existing trust had not been validly revoked.

That portion of the judgment appealed from is reversed and the cause remanded to the lower court for further proceedings consistent with the decision herein.

Shoemaker, P. J., and Taylor, J., concurred.

The petition of the plaintiff and respondent and the defendants and respondents for a hearing by the Supreme Court was denied June 16, 1964.