[Crim. No. 286. Fifth Dist. Aug. 7, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. PHILLIP GARCIA PEREZ, Defendant and Appellant.

Phillip Garcia Perez, in pro. per., Wallace J. Quinlisk and W. J. McDermott, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Frank O. Bell, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, P. J.—Phillip Garcia Perez and his sometime mistress, Lydia Garcia Reyes, were jointly informed against for violation of section 11500 of the Health and Safety Code

in that on or about December 1, 1965, "they did wilfully and unlawfully have in their possession narcotics, to wit: Heroin, without the written prescription of a physician, dentist, podiatrist, or veterinarian licensed to practice in this State." Lydia Garcia Reyes pleaded guilty to the charge; this appeal, therefore, concerns only Phillip Garcia Perez.

Mr. Perez was represented during the trial by an appointed attorney. His later request for appellate counsel was also granted, and Wallace Quinlisk was named to represent him; that attorney was later relieved, upon his request, from his duty to act further for the appellant, and Mr. Perez filed a comprehensive and able brief; thereafter, at the further request of the defendant for an attorney, W. J. McDermott was appointed to represent him and made an extensive oral argument in his behalf.

The appellant contends:

1) That the evidence is insufficient to justify the verdict;

2) That the court committed prejudicial error by permitting reference to certain prior criminal activity;

3) That the court erroneously instructed the jury;

4) That the district attorney was guilty of gross misconduct.

In weighing the contention that the evidence did not warrant the verdict, it should be noted at the outset that important elements of testimony given by law enforcement officers on the one hand and by defense witnesses on the other were in direct conflict. If the defense told the truth in essential particulars, the conviction should be reversed; on the other hand, if the law enforcement officers testified correctly, it is our conclusion that the facts amply sustain the judgment.

I. THE EVIDENCE WAS SUFFICIENT TO WARRANT A CONVICTION.

 The argument that there was insufficient evidence to sustain the verdict must be considered in the light of the clearly established law that an appellate court is in no sense the trier of fact and that it does not have to be convinced of defendant's guilt beyond a reasonable doubt. That is the function of the jury in the trial court, and it is our duty only to inquire if the circumstances reasonably justify the trier of fact's findings. If we determine that there is substantial evidence to support the conclusion of the jury, it is our duty to sustain the conviction as against that particular attack. (*People* v. *Hillery*, 62 Cal.2d 692, 702-703 [44 Cal. Rptr. 30, 401 P.2d 382]; *People* v. *Groom*, 60 Cal.2d 694, 697

[36 Cal.Rptr. 327, 388 P.2d 359] ; *People* v. *Rosoto*, 58 Cal.2d 304, 321 [23 Cal.Rptr. 779, 373 P.2d 867].)

Armed with a search warrant, three agents of the California Bureau of Narcotic Enforcement, Messrs. Shoemaker, Lacey and Sherwood, together with Fresno Police Department Officers Thrasher and Packard and a representative of the district attorney's office, entered the home of the defendant Perez, where he lived with his mother. All of the officers but one used the back door of the residence and they moved quickly. As they passed through the kitchen, Miss Reyes was busy burning something; they did not stop there but entered the living room where defendant Perez was; they seized him and tried to prevent his swallowing what appeared to be, according to their own terminology, a "balloon," which was orange in color; it apparently was then successfully swallowed by the defendant. The officers attempted, without success, to induce Perez to vomit up the receptacle and its contents. The appellant was placed under arrest, and Agent Lacey gave him the constitutional warnings then required by law. Appellant informed Agent Shoemaker that he had been in the kitchen previously when he had heard a dog barking outside; he thought the commotion might be caused by the police and he walked into the living room to look out the front window; he also told Agent Shoemaker, with respect to what he had swallowed, "Man, that was close. I just swallowed two papers." The evidence shows that, in the jargon of the world of addiction, the word "paper" means a quantity of heroin sufficient for a dose or an injection of the drug, wrapped in white paper and of a form and nature familiar to addicts. The appellant also stated to Agent Lacey, "I am sorry, I swallowed it." (Later, on the way to the jail, Miss Reyes asked defendant Perez, in the hearing of the officers, if they found any "stuff" on him, and he replied that he had swallowed it, meaning heroin, according to the expert testimony as to the locution.)

Meanwhile, in the kitchen, Miss Reyes was busy attempting to cover up what apparently were recent preparations for the use of heroin. She burned some of the leavings resulting from the planned use of the drug. The police inferred legitimately from the whole situation that when the law enforcement officers arrived each of the two defendants was about to effect an injection of the forbidden drug.

In the kitchen of appellant's home, the enforcement officers found a single complete set of instruments for the injections:

a spoon with a blackened under-base in which it was designed to heat the drug in a few drops of water, a needle and an eye dropper for the purpose of injecting the watered heroin into a vein. Both Mr. Perez and Mrs. Reyes were habitues, and the record shows that, within a short period of time before the day and hour in question, they had made injections in their arms. Miss Reyes said that the instruments to accomplish the injections were hers and that she had brought them to the Perez house with her. The contrary inference sought to be established by the police was that the paraphernalia was, at the very least, a set of items kept by the appellant for use by him and Miss Reyes and that these various parts of an injecting outfit were in the joint possession of the two defendants.

The testimony of the chemist agent of the California Bureau of Narcotic Enforcement, Mr. Louis Moller, was that the various articles constituting the paraphernalia for the taking of a hypodermic injection of heroin contained telltale indications of their contents. The hypodermic needle with a piece of a dollar bill used as a shim or gasket for the eye dropper responded to well-recognized chemical tests by showing that it had contained an opium derivative; the chemical test of the eye dropper established that an alkaloid had been present; it contained traces of heroin. The teaspoon was the article that showed the most heroin. The dark color underneath the spoon was the result of burning; the purpose of the application of fire, usually by a match, to the bottom of such a spoon is "First, to dissolve the heroin, they actually put the powdered heroin in the spoon with a little water and then they have a piece of cotton that they drop in and they burn the bottom of the spoon to dissolve the heroin and get it in solution. . . ." The heating of the water also tends to make it more acceptable as an injection in that its temperature is thus brought nearer to that of the blood. Mr. Moller testified, "Actually, the spoon had a lot of sticky substance on the spoon and I put three drops of mercuric iodide, 27 per cent hydrochloric acid, and I took a stirring rod and I stirred it up and then I poured the stuff off on a miscroscopic slide and then I examined the microscope slide and I got rosettes of yellow crystals"; the latter indicated the presence of heroin. The witness further testified: "I ran many analyses and most of the time the spoon or the bottle cap or something like that, when you add the mercuric iodide and 27 per cent hydrochloric acid and look at it under a microscope, you will see only, oh, maybe five or six crystals, rosettes of yellow crystals, and in this particular

sample it was just like examining a sample of heroin. There were numerous crystals and I believe, actually, that a person could actually have received an injection of heroin from this. Q. Now, by the way, this sticky substance that you analyzed, that was inside the spoon, is that right? A. Yes. Q. That would be People's 1-A for identification? A. Yes, it is not there now because of the chemical test. Q. Yes, And the sticky substance that you analyzed, was it visible to the naked eye, sir? A. Oh, yes, very visible.''

The only lacking element of the offense, then, up to this point of review was proof of knowledge by appellant that there was heroin present in the house and that it was in fact the drug forbidden by the law. This element was thereafter proven by the testimony of law enforcement agents that in the past the appellant had shown, in conversations with the agents and by the actual use of heroin injections, that he was fully conscious of the nature and character of the drug. This testimony was objected to by the appellant during the trial; and it is under attack, also, in his brief on appeal. We shall discuss in more detail the admission of this evidence at a later point of the opinion.

It should be mentioned in passing that there was also some testimony given by law enforcement officers that the appellant tried to escape. While it is not conclusive, there is some indication in the record that the appellant vainly attempted an escape through the front door after the arrival of the officers, thus indicating consciousness of guilt, but that he was induced to change his mind when he noted the presence of so many officers.

It is clear that the testimony of Chemist Agent Moller, taken with the evidence of the location of the paraphernalia for injection showed the *corpus delicti* of the crime of possession of heroin. (See *People* v. *Cunningham*, 188 Cal.App.2d 606, 610-611 [10 Cal.Rptr. 604] ; *People* v. *Lawton*, 186 Cal. App.2d 834, 836-837 [9 Cal.Rptr. 122] ; *People* v. *Walters*, 148 Cal.App.2d 426, 431 [306 P.2d 606].)

The appellant cites *People* v. *McChristian*, 245 Cal.App.2d 891 [54 Cal.Rptr. 324], and federal cases to support his position. One of the latter is *Cook* v. *United States*, 362 F.2d 548, 549, in which the United States Court of Appeals of the Ninth Circuit reversed a conviction of conspiracy to conceal narcotic drugs. The court in that case emphasized that there was no direct proof that the substance in question was a narcotic, even though the defendants in the case dealt with it with a

secrecy appropriate in narcotic traffic, high prices were bid for the substance, and the parties involved referred to it as a narcotic drug as among themselves. The court held that ". . . before that presumption can come into play there must be proof that the possessed drugs were in fact narcotic drugs." It is a basic rule that each case must depend upon its own facts; in that instance there was no testimony by a "qualified witness," as here, that the substance was in fact heroin. And it should be noted that while in the *Cook* case the substance in question was actually received in evidence, no attempt was made to prove the narcotic character of the powder.

In *Toliver* v. *United States,* 224 F.2d 742, 745, the same court held that there was sufficient evidence to establish the presence of heroin.

Appellant cannot rely successfully on the case of *People* v. *McChristian, supra,* 245 Cal.App.2d 891, 896-897, for that authority is also distinguishable from the case at bar. There the defendant was charged in two counts with possession of heroin, in violation of section 11500 of the Health and Safety Code. His motion to dismiss under Penal Code section 995 was granted. The evidence at the preliminary examination was that a police officer, who was acquainted with the defendant, saw him in front of a liquor store at about 3:30 p.m. The officer had information that the defendant was engaged in narcotics activity; he initiated conversation with the defendant who mumbled a reply; the officer could not understand what the defendant said, because the accused had something in his mouth that blocked his voice. The officer grabbed him by the throat to prevent him from swallowing and ordered him to open his mouth. The defendant did so and the officer saw six to nine "balloons" jammed into his mouth; the balloons were not recovered, however, because the defendant broke away and ran. The next day two officers went to see the defendant at a residence in Los Angeles; when they attempted to enter they saw him put his hand in his pocket and withdraw six small balloon-wrapped packages; defendant ran toward the bathroom and out of view; a half hour later, the culprit was arrested and searched, as was the house, but no narcotics were found. Again, there was no testimony by the defendant in that case that the "balloons" contained heroin. In affirming the order of dismissal, the court held that: "The opinion testimony of the officers, based upon their observation of the outward appearance of the balloons, was speculative

and conjectural, and was not competent evidence that the balloons in the possession of defendant contained heroin.''

Our review of the record shows that in the house where the appellant lived there was a complete set of instruments necessary to give injections of heroin, and that there was enough of the drug in the spoon, constituting part of the paraphernalia, to constitute a ''fix,'' that is to say, an injection of the heroin. In addition, there was the statement of the appellant that he had swallowed in the ''balloon,'' which a witness saw in his mouth, enough heroin to constitute two dosages. We believe that the evidence, therefore, generally considered, proved without question the presence of the forbidden drug under the dominion and joint control of the two defendants. (*People* v. *Hamilton,* 223 Cal.App.2d 542, 544 [35 Cal.Rprt. 812] ; *People* v. *Villanueva,* 220 Cal.App.2d 443, 450 [33 Cal.Rptr. 811].)

While the defendant's witnesses claimed that the paraphernalia for taking an injection of heroin belonged to Miss Reyes, that was not the theory of the prosecution. Both defendants were confessed habitues, and it would seem strange that the appellant, who was admittedly taking heroin frequently, should not have the instruments in his home for the purpose of effecting such injections. The evidence was such as to authorize the jury to make an implied finding of jointly held possession, not only of the paraphernalia necessary to give an injection of heroin, but of the heroin which was found in the spoon and which, upon analysis and under the testimony of Chemist Agent Moller, was said to be sufficient in quantity to permit its taking as a ''fix,'' or dosage of the forbidden drug. We have specific evidence of the presence of heroin in a sufficient quantity to constitute a crime. It is true that in order to convict a person of possession of heroin, there must be proof that there is a sufficient amount either to permit a sale or use and that the presence of minute fragments, which cannot be utilized in either fashion, is not sufficient to warrant a conviction for possession. (*People* v. *Leal,* 64 Cal.2d 504 [50 Cal. Rptr. 777, 413 P.2d 665] ; *People* v. *McCarthy,* 64 Cal.2d 513 [50 Cal.Rptr. 783, 413 P.2d 671] ; *People* v. *Thomas,* 246 Cal. App.2d 104 [54 Cal.Rptr. 409].) The testimony of Chemist Agent Moller was that there was enough heroin on the spoon so that an injection could be taken from it.

In view of the complete proof in every detail warranting a finding of possession of heroin, it becomes a somewhat academic question to determine whether or not the swallowing of

the two papers of heroin contained in the "balloon," which the defendant himself admitted, constituted separate complete proof of the crime. The admission by the defendant that he had swallowed two dosages of heroin, in any event, supports the conviction, even if it should be argued that, standing alone and without the testimony concerning paraphernalia and the contents of the spoon, the proof would not have been sufficient.

II. PROOF OF KNOWLEDGE OF WHAT HEROIN IS WAS NECESSARY EVEN THOUGH IT INCIDENTALLY INDICATED OTHER CRIMES.

■ In order to prove the crime of possession of heroin alleged in the information it is necessary to show not only that a defendant has physical possession of the drug, but also that he has knowledge of its presence and of its forbidden character. For example, a messenger boy might carry a package filled with heroin for delivery to someone else, but if he does not know of what the contents of the package consist or that it is a forbidden drug, he would not be guilty of "possession" in carrying it from one place to another. For this reason, the People introduced testimony showing knowledge on the part of Mr. Perez of heroin and its forbidden quality. The effect of this testimony was strictly limited by the court to the question above stated, and the judge gave repeated instructions to the jury accordingly. While it is undoubtedly injurious to a defendant to prove that at other times he has broken the law, generally speaking, it is permissible to make such proof if a necessary element of the crime of which he is presently charged is shown by such testimony. As is correctly said in *People* v. *Clifton,* 248 Cal.App.2d 126, 132-133 [56 Cal.Rptr. 74], if evidence which incidentally may be damaging to a defendant establishes a fact material to the prosecution's case, it cannot properly be excluded merely because it might tend to be prejudicial. (See *People* v. *Peete,* 28 Cal.2d 306, 314-315 [169 P.2d 924] ; *People* v. *Raleigh,* 83 Cal.App.2d 435, 442 [189 P.2d 70] ; *People* v. *Brown,* 168 Cal.App.2d 549, 553 [336 P.2d 1] ; *People* v. *Griffin,* 66 Cal.2d 459, 464 [58 Cal.Rptr. 107, 426 P.2d 507].)

Appellant argues that this element of the crime was sufficiently shown otherwise; but there was no offer to stipulate accordingly and the evidence was relevant and material. The testimony therefore, of admissions made by the defendant to law enforcement officers with respect to heroin at different times preceding the charge here made and the testimony of

puncture marks on appellant's arms on earlier occasions indicating heroin use were properly admissible.

III. The Instruction Complained Of Was Not Prejudicially Erroneous.

█ The appellant takes exception to an instruction given by the court in the following words: "You are further instructed that the law does not fix any minimum amount of heroin that is necessary to constitute the possession thereof. The possession of heroin in any amount constitutes a violation of the law where the possessor has knowledge of its presence and of its narcotic character."

In view of the announcement of the present applicable rule in *People* v. *Leal, supra,* 64 Cal.2d 504, 512, *People* v. *McCarthy, supra,* 64 Cal.2d 513, and *People* v. *Thomas, supra,* 246 Cal.App.2d 104, the instruction as given was abstractly erroneous; that is true because the present law requires that enough heroin be possessed in order to permit its use by sale or as an injection. A few crumbs or minute amounts of a forbidden drug are presently insufficient to warrant a conviction for possession as stated in the authorities above cited. However, to be prejudicial, an error must be of such a nature as to permit a conviction which would otherwise be impossible, and, in the present case, it is clear that while the instruction as given was not accurate from an abstract point of view there can be no question that it was not prejudicial to the defendant, because all the evidence in the case showed that if the appellant were guilty of possession of any heroin it was an amount sufficient to constitute a breach of the law. Chemist Agent Moller testified, without contradiction, that there was a sufficient amount of the forbidden drug in the spoon to constitute a dosage, and, with respect to the heroin swallowed by the appellant according to the testimony concerning his. admissions, the evidence was that there were two "papers" involved. Thus, all evidence relative to both instances of physical possession of heroin related to an amount sufficient to constitute a dose, or more, and was large enough to be denounced under the *Leal* rule, *supra*. That being so, the error in the instruction was not prejudicial.

IV. The District Attorney's Staff Was Not Guilty Of Prejudicial Misconduct.

The appellant claims that the district attorney's deputy was guilty of gross misconduct in his cross-examination of defense witnesses. Both defendants took the witness stand,

and their testimony in important particulars was at complete variance with the account given by the law enforcement officers.

Experience shows that cross-examination is one of the most effective aids to an ascertainment of the truth. ▆▆ While it is improper to ask questions which find no support in the actual facts, or to insinuate charges harmful to a defendant in the absence of a good faith belief on the part of the prosecutor that the questions should be answered in the affirmative, or that the facts which constitute the background of the questions could be proved if their existence should be denied (*People* v. *Perez,* 58 Cal.2d 229, 241 [23 Cal.Rptr. 569, 373 P.2d 617, 3 A.L.R.3d 946] ; *People* v. *Swayze,* 220 Cal.App.2d 476, 497 [34 Cal.Rptr. 5] ; *People* v. *Lo Cigno,* 193 Cal.App.2d 360, 388 [14 Cal.Rptr. 354] ), legitimate cross-examination is a favored method of attempting to secure what the cross-examiner believes to be the truth. Here, the questions asked of appellant and of Miss Reyes were wholly competent and relevant. Some of them were designed to show knowledge on the part of the defendants of the nature and forbidden character of heroin, and some of them were planned to probe the theory of the prosecution that the appellant and his codefendant were preparing to take a "fix." when the officers entered the house, and that the "balloon" swallowed by appellant contained two "papers" of heroin.

It cannot be said that the prosecution did not have the means to prove the truth of the allegations inferentially assumed in the questions. In fact, the deputy district attorney told the court that he was willing to make an offer of proof. And the record shows in connection with the report of the probation officer that the appellant had in the past engaged in the sale of narcotics ; it is quite apparent that this fact would establish his knowledge of the forbidden character of the drug. (See *People* v. *Weire,* 198 Cal.App.2d 138, 142-143 [17 Cal.Rptr. 659] ; *People* v. *Torres,* 98 Cal.App.2d 189, 191-192 [219 P.2d 480].) After Miss Reyes admitted that she was habitually using heroin, it was neither an exhibition of bad faith nor an improper solicitation of fact to inquire whether she did not obtain it from the codefendant.

▆▆ We do not believe that any of the questions asked by the prosecution were improper, but we also point out that in no instance was any question objected to on the ground that it constituted misconduct. Consequently, this contention cannot now be made for the first time on appeal. In *People* v. *Berry-*

*man,* 6 Cal.2d 331, 337 [57 P.2d 136], it is said: "The general rule regarding misconduct of the district attorney which tends to and is likely to result in prejudice to the defendant is that where no objection is made to such misconduct by the defendant, or where objection is made and the court sustains the objection and properly admonishes the jury, the misconduct claimed to be prejudicial to defendant's rights will not furnish grounds sufficient to justify the granting of a new trial or the reversal of the judgment. (8 Cal.Jur., § 603, p. 623, and cases there cited.)" (See *People* v. *Perez, supra,* 58 Cal.2d 229, 247; *People* v. *Lyons,* 50 Cal.2d 245, 262 [324 P.2d 556].) The two exceptions to this general rule noted in the *Berryman* case are not applicable here.

The judgment is affirmed.

Stone, J., and Gargano, J., concurred.

A petition for a rehearing was denied September 5, 1967, and appellant's petition for a hearing by the Supreme Court was denied October 5, 1967.