[Crim. No. 3116. Fourth Dist., Div. Two. Apr. 23, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE LYNAM et al., Defendants and Appellants.

492

Jerrell Babb for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and H. Warren Siegel, Deputy Attorney General, for Plaintiff and Respondent.

TAMURA, J.—Following a jury trial defendants Lynam, Offley and Dunham were found guilty of conspiracy to commit grand theft and three counts of grand theft. Imposition of sentence was suspended and defendants were placed on probation subject to conditions.[1] Defendants Lynam and Offley appeal from the orders granting probation.

The indictment arose out of alleged misrepresentations made by defendants in the sale of trust indentures known as "Pure Trust Family Circle Organization." (Pure Trust.) The conspiracy count charged six overt acts, five involving sales of Pure Trusts and one involving an attempt to induce an attorney to render legal services to purchasers of the trust. The three grand theft counts charged defendants with obtaining money by false pretenses from the Peels ($2,100), the Dovers ($3,000), and the Robinsons ($7,600).

The evidence may be summarized as follows:

---

[1]As to defendant Offley the court reduced the "offense" to a misdemeanor.

Defendant Lynam was the manager and co-trustee of Estate Organization Service; defendant Offley was a co-trustee and secretary-treasurer of the entity; and defendant Dunham was an accountant employed by the organization. In order to promote the sale of Pure Trusts, Lynam prepared and distributed pamphlets extolling the benefits to be derived through the use of the Pure Trust device, including representations that the creator of the trust could control the future of his estate as he desired while maintaining it as a "living estate" for his family and that the trust would avoid probate and court costs, eliminate estate and inheritance taxes and avoid personal liability.

In early 1966 a copy of the pamphlet distributed by Estate Organization Services came to the attention of Mr. Wadsworth, an insurance agent in Hemet. He contacted Lynam whose name and address were stamped on the pamphlet and as a result defendants came out to Hemet and held several meetings with Wadsworth. During the meetings Lynam orally made the representations contained in the pamphlet; namely, that the creator would avoid personal liability and that if the trust were "set up properly" it would avoid estate and inheritance taxes. In reliance upon the representations, Wadsworth purchased a Pure Trust for $1,000 on February 7, 1966. In addition he agreed to refer defendants to others in the area who might be interested with the understanding that he would be paid a 20 percent commission. Lynam furnished Wadsworth with additional copies of the pamphlet which he distributed among his insurance clients and friends in the Hemet area.

Wadsworth's leads resulted in the sales on which the three grand theft counts were based; namely, to the Peels on April 1, 1966, the Dovers on April 11, 1966, and the Robinsons on March 30, 1966. They all testified that they became interested in the Pure Trust through the pamphlets they received from Wadsworth, that prior to the purchases defendants came to their homes, that Lynam orally made the representations contained in the pamphlets, and that in reliance upon the representations they purchased the trust indentures. The Dovers paid $3,000 down on a purchase price of $6,100 but refused to pay the balance after being contacted by a representative of the Attorney General's office; the Peels paid the total agreed price of $2,100; the Robinsons paid the total agreed price of $7,600.

In addition, defendants made a sale to Mr. and Mrs. Han-

sen on April 21, 1966, and a sale to Mr. and Mrs. Breyer on December 5, 1966. The Hansens paid $3,000 down on a total purchase price of $5,680 but refused to pay the balance. The Breyers paid the full purchase price of $4,511.

In early 1966, apparently through an appointment arranged by Mr. Wadsworth, defendants appeared at the office of Mr. Carpenter, an attorney in Hemet specializing in estate planning and administration, for the purpose of inducing him to act as attorney for purchasers of Pure Trust in the Hemet area. During the meeting Lynam stated that the tax advantages of the Pure Trust were as represented in the pamphlets he had prepared and distributed and that the tax consequences had been determined by a case that had gone "all the way to the Supreme Court." When asked the name of the case, he was unable to recall it. Dunham stated that he had discussed the tax aspects with agents of the Internal Revenue Service but was unable to recall their names. Mr. Carpenter informed defendants that he disagreed with their representations and declined to become involved.

Mr. Carpenter also testified for the People as an expert witness. It was his opinion that by reason of the interest and control retained by the creator of the Pure Trust and the fact that the trust was revocable, estate and inheritance taxes would not be avoided.

Mr. Sierdorf, assistant inheritance tax attorney with the Inheritance and Gift Tax Division of the State Controller's office testified that he had examined the Pure Trusts involved in the present action and found that they were revocable and would not avoid inheritance taxes.

Over defendant's objections the prosecution was permitted to introduce into evidence and read to the jury certain orders issued in an action brought by the Attorney General in the superior court in Los Angeles under section 17500 of the Business & Professions Code to enjoin Lynam, Estate Organization Services, its officers and employees, and others from disseminating false and misleading advertising in the sale of Pure Trusts. The prosecution read to the jury (1) the provisions of a preliminary injunction issued on July 21, 1964, enjoining defendants, in substance, from representing that the Pure Trust would avoid personal liability and estate and inheritance taxes, (2) an order for summary judgment issued on September 28, 1964, in which it was recited that the court had determined that Lynam was the owner of Estate Organization Services and that in promoting the sale of Pure Trust

in California he had made the false, misleading and deceptive statements alleged in the complaint and (3) the provisions of a permanent injunction issued on July 21, 1966, enjoining the defendants from representing that the Pure Trust would avoid personal liability, prevent probate or avoid estate or inheritance taxes.

The evidence was uncontradicted that the foregoing orders were applicable to defendants in the instant action and that each had notice of the contents thereof within a few days after their issuance. It was stipulated that at the time of the trial of the present action an appeal from the judgment in the injunction suit was pending. The judgment was affirmed on August 29, 1967. (*People* ex rel. *Mosk* v. *Lynam*, 253 Cal.App. 2d 959 [61 Cal.Rptr. 800].)

Defendant Lynam admitted preparing and distributing pamphlets to promote the sales of Pure Trust but testified that in his opinion the representations made therein as well as those which he made orally were not prohibited by the preliminary injunction, that in his opinion there would be no estate or inheritance taxes because the trust would own the assets, and that codefendant Dunham had received an oral opinion from the Internal Revenue Service that if "properly used" the trust would avoid federal estate taxes. Dunham testified that there was a misunderstanding and that he did not obtain an opinion from the Internal Revenue Service. An Internal Revenue agent testified that an opinion on the estate tax consequences of the trust had never been requested from or given by the bureau.

Defendant Offley testified that she was the co-trustee and secretary-treasurer of Estate Organization Services, that she was authorized to draw checks on the bank account of the organization, that she notarized signatures of persons who executed Pure Trusts, that she acted as secretary to Mr. Lynam, and that during discussions with purchasers she took notes on the information necessary to complete the indenture forms. She testified that Lynam represented to purchasers that the Pure Trust would avoid estate and inheritance taxes and that the creator would avoid personal liability, but that she believed the representations were true, that Lynam continued to make the same representations after the preliminary injunction issued as he had been making prior to its issuance, and that although she was aware of the court orders and had read them, she did not believe that representations they made were prohibited.

Defendant Dunham testified that Lynam did make the rep-

sentations charged, but that he believed that the Pure Trust device if "properly used" would result in the tax advantages represented.

Defendants contend (1) that the court committed prejudicial error in permitting the People to introduce into evidence the civil orders; (2) that the court erred in instructing the jury on other offenses; (3) that the court erred in instructing the jury that the Pure Trust was revocable as a matter of law; and (4) that the evidence was insufficient to support the convictions.

I

Defendants contend that the evidence relating to the injunction suit was irrelevant, that it was prejudicial because the jury might have inferred that the suit was a criminal prosecution, and that the evidence was inadmissible because the pendency of the appeal stayed the injunction.

In overruling defendants' objections the court cautioned the jury that the civil orders were being received for the limited purpose of showing knowledge, intent and state of mind of the defendants and not to prove the truth or falsity of the matters recited therein. A similar cautionary instruction was read to the jury at the close of the case.[2]

The evidence was properly received for the limited purposes stated by the court. Knowledge of the falsity of the representations and intent to defraud were essential elements of the offense charged. (*People* v. *Ashley,* 42 Cal.2d 246, 259 [267 P.2d 271]; *People* v. *Conlon,* 207 Cal.App.2d 86, 92 [24 Cal. Rptr. 219]; *People* v. *Caruso,* 176 Cal.App.2d 272, 276 [1 Cal.Rptr. 428].) The misrepresentations must have been knowingly made with intent to deceive; if they were made innocently or inadvertently, they could not have formed the basis for a conviction. (*People* v. *Ashley, supra.*)

The general test of admissibility of evidence is

---

[2]The court read the following instruction: "Evidence was also offered in this case of an injunction against defendant George Lynam and an organization known as Estate Organization Service. Such evidence was received, and may be considered under the rules previously stated in this instruction, only for such value as it may have in showing that defendants possessed the knowledge that certain representations about the tax and personal liability consequences of the Pure Trust were false, and that defendants entertained the felonious intent which is a necessary element of the crimes charged in the indictment. It is for you to determine whether this evidence has any value in showing the knowledge and intent required in the crimes charged. In assessing the value of this evidence, the court instructs you that the injunction introduced herein is in full force and effect even though an appeal is pending in the civil litigation."

"whether it tends logically, naturally, and by reasonable inference to establish any fact material for the People, or to overcome any material matter sought to be proved by the defense." (*People* v. *Kelley*, 66 Cal.2d 232, 239 [57 Cal.Rptr. 363, 424 P.2d 947]; *People* v. *Peete*, 28 Cal.2d 306, 315 [169 P.2d 924].) The relevance of the civil orders on the question of defendants' knowledge of the falsity of their representations and their intent to defraud is self-evident. The fact that the injunction suit involved a civil wrong rather than a criminal offense did not render it less relevant or inadmissible. (Evid. Code, § 1101, subd. (b).[3]) The probative value of the evidence outweighed any possible prejudicial effect. The evidence tends to logically and by reasonable inference prove the issues on which it was offered, it was offered on an issue material to the prosecution's case, and was not merely cumulative. (See *People* v. *Stanley*, 67 Cal.2d 812, 818-819 [63 Cal.Rptr. 825, 433 P.2d 913].)

In *United States* v. *Rosenblum* (2d Cir. 1964) 339 F.2d 473, a mail fraud conviction, the court permitted a former United States attorney to testify that in a prior proceeding for a violation of the Mail Fraud Statute charges were dropped when defendant consented to a cease and desist order. In affirming the conviction the court held that the evidence was properly received to negative defendants' claim of a lack of fraudulent intent. In *Nemec* v. *United States* (9th Cir. 1949) 178 F.2d 656, *cert. den.* 339 U.S. 985 [94 L.Ed. 1388, 70 S.Ct. 1006], defendants were convicted of violating the federal mail fraud statute in pursuing a scheme to defraud by inducing persons in the State of Washington to invest in a profit-sharing scheme involving the location and operation of mining claims. The prosecution was permitted to introduce into evidence a cease and desist order issued by the California Corporations Commissioner ordering defendants and others to desist from selling interests in the venture in California. In affirming the conviction and rejecting the contention that the evidence was improperly received, the court held that the evidence was relevant to show that defendants' representations to persons in Washington as to the reason they rather than Californians were being given the opportunity to invest in the enterprise were false and why they were false.

---

[3]Evidence Code, section 1101, subdivision (b) provides: "Nothing in this section prohibits the admission of evidence that a person committed a crime, *civil wrong*, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts." (Italics supplied.)

■ Defendants' contention that the evidence was prejudicial because the jurors would infer that the injunction suit was a criminal prosecution is without substance. There was nothing in the documents read to the jury suggesting that the suit was a criminal prosecution nor did the People so intimate. Nor did the defendants request the court to caution the jury against drawing such an inference. Had the defendants done so an appropriate statement from the court could have eliminated any possible confusion in the minds of the jurors. In these circumstances defendants may not now complain that the jurors might have been confused as to the nature of the injunction suit. (Cf. *People* v. *Berryman*, 6 Cal.2d 331, 337 [57 P.2d 136]; *People* v. *Perez*, 253 Cal.App. 2d 288, 298-299 [61 Cal.Rptr. 582].)

■ Defendants' contention that the evidence should not have been received because the pendency of the appeal stayed the injunction is without merit. The injunction was prohibitory and, hence, was not stayed by an appeal. (*Dry Cleaners & Dyers Institute* v. *Reiss*, 5 Cal.2d 306, 308-309 [54 P.2d 470]; *Ohaver* v. *Fenech*, 206 Cal. 118, 123 [273 P. 555]; *Wolf* v. *Gall*, 174 Cal. 140, 142 [162 P. 115]; 3 Witkin, Cal. Procedure (1954) p. 2208.) *Clute* v. *Superior Court*, 155 Cal. 15 [99 P. 362, 132 Am.St.Rep. 54], cited by defendants is inapposite. In that case suit was brought against an elected treasurer and manager of a hotel corporation to compel him to surrender all books, records and property to the secretary on the allegation that he had been removed from office. A preliminary injunction ordering defendant to surrender possession of the books, records and property was held to be mandatory in character and stayed by an appeal. In the present case no affirmative action was required by the terms of the preliminary injunction; it was clearly prohibitory in character.

We conclude that the evidence pertaining to the injunction suit was properly received.

II

■ Defendants contend that an instruction on other offenses which was based upon and made specific reference to sales of Pure Trust to the Hansens and the Breyers was prejudicially erroneous. They contend that those sales were not ''other offenses'' because the Hansens and Breyers relied upon recommendations of their trusted friends in making their final decisions to purchase the indentures.

However, the evidence discloses that they became interested in the Pure Trust through one of the pamphlets prepared by

Lynam and that prior to purchase defendants called on them and orally made the representations contained in the pamphlet. Mrs. Hansen testified that she received her copy from Mr. Wadsworth and relied upon the representations contained in it. On cross-examination she testified that she bought the trust because of her great confidence in Mr. Wadsworth and the fact that he had previously purchased one. The Breyers received their copy from Mr. Moore, their insurance agent. When asked whether he relied upon Lynam's oral representations, Mr. Breyers testified: ''I relied on the integrity of Mr. Moore and his voucher of the integrity of Mr. Lynam.''

 In the foregoing circumstances the two sales properly formed the basis for an instruction on other offenses. To support a conviction of the crime of theft by false representations, the representations need not be the exclusive inducement; it is sufficient if they materially influenced the victim to part with his money. (*People* v. *Ashley, supra,* 42 Cal.2d 246, 259; *People* v. *Phillips,* 186 Cal.App.2d 231, 239 [8 Cal. Rptr. 830] ; *People* v. *Chamberlain,* 96 Cal.App.2d 178, 182 [214 P.2d 600].) The evidence shows the Hansens and the Breyers were motivated by the advantages they hoped to gain as described in the pamphlet. However, even assuming that they ultimately relied exclusively on the advice of other persons, the evidence was nevertheless sufficient to show the commission of attempted grand theft. Attempted grand theft may be committed even though the intended victim does not rely on the false representations. (*People* v. *Anderson,* 55 Cal. 2d 655, 661 [12 Cal.Rptr. 500, 361 P.2d 32] ; *People* v. *Camodeca,* 52 Cal.2d 142, 147 [338 P.2d 903].)

The sales to the Hansens and Breyers were similar in all material respects to those forming the basis for the grand theft counts and were relevant to show intent as well as to corroborate the evidence of false representations. (*People* v. *Weitz,* 42 Cal.2d 338, 347 [267 P.2d 295] ; *United States* v. *Robbins* (2d Cir. 1965) 340 F.2d 684, 688; McCormick, Evidence (1954) § 164, pp. 344-345.) The fact that the Breyer sale occurred after the dates of the offenses charged did not render it inadmissible. (*People* v. *Griffin,* 66 Cal.2d 459, 464-465 [58 Cal.Rptr. 107, 426 P.2d 507] ; *People* v. *Maldonado,* 221 Cal.App.2d 128, 133 [34 Cal.Rptr. 168].)

 Defendant also contends that the court erred in instructing the jury that the Pure Trusts involved in the present action were revocable as a matter of law.[4]

---

[4]The instruction was as follows: ''The court instructs you that, as a matter of law, the Pure Trust-Family Circle Organizations which are the

The contention is without merit. The trust indentures provided that they would continue for 25 years unless sooner terminated and contained no express provision making them irrevocable. Under California law the indentures were revocable. (Civ. Code, § 2280[5]; *Wells Fargo Bank* v. *Greuner*. 226 Cal.App.2d 454, 459 [38 Cal.Rptr. 132]; *Title Ins. & Trust Co.* v. *McGraw*, 72 Cal.App.2d 390, 399 [164 P.2d 846]; *Fernald* v. *Lawsten*, 26 Cal.App.2d 552, 560 [79 P.2d 742]; *Newman* v. *Commissioner of Int. Rev. Service*, 222 F.2d 131, 133; Bogert, Trusts, ch. 477, § 999; see *People* ex rel. *Mosk* v. *Lynam, supra*, 253 Cal.App.2d 959.) Defendants' reliance upon *Touli* v. *Santa Cruz County Title Co.*, 20 Cal.App. 2d 495 [67 P.2d 404], is misplaced. That case held that a deed of trust given as security for the payment of an obligation being in legal effect a mortgage with power of sale and not an ordinary voluntary trust was not subject to the provisions of section 2280 of the Civil Code.

### III

Finally, defendants contend that the evidence was insufficient to support the verdicts of guilt.

There was substantial evidence to support the grand theft verdicts as to defendant Lynam. He admitted preparing and distributing the pamphlets containing the representations relied upon by the purchasers. He gave the pamphlets to Mr. Wadsworth for distribution among his friends and clients to provide leads. In furtherance of the understanding, Wadsworth distributed the pamphlets to the purchasers mentioned in the indictment, all of whom became interested by reason of the representations contained in them. Lynam met with the purchasers and orally made representations contained in the written material. Defendants Offley and Dunham corroborated the testimony of the victims that Lynam did make the representations charged. Testimony of the co-defendants may be properly considered on the issue of Lynam's guilt. (*People* v. *Gilbert*, 63 Cal.2d 690, 703 [47 Cal.Rptr. 909, 408 P.2d 365]; *People* v. *Yeager*, 194 Cal. 452, 488 [229 P. 40]; *People* v. *Frahm*, 107 Cal.App. 253, 262 [290 P. 678].) There was substantial evidence that Lynam knew that the representations he

subject of the indictment herein are revocable. The court further instructs you that the creators of the Pure Trusts, by virtue of the written provisions and terms in said trust document, have retained the power; either alone or in conjunction with other persons, to alter, amend, revoke or terminate the trust'.

[5] Section 2280, Civil Code, provides: "Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor by writing filed with the trustee, , , ."

made were false. He was a defendant in the injunction suit and admitted that he had knowledge of the contents of the orders.

■ There is also substantial evidence to support the grand theft verdicts as to defendant Offley. She was an official and co-trustee of Estate Organization Services; she was present when Lynam made the false representations and by her conduct signified her agreement with Lynam; she acted as Lynam's driver and secretary and took down the information necessary to prepare the indenture forms; she notarized the signatures of the parties executing the trusts and she was subject to and had knowledge of the contents of the preliminary and permanent injunctions. At the very least the evidence was sufficient to support her conviction as an aider and abettor. (*People* v. *Barker,* 53 Cal.2d 539, 543 [2 Cal.Rptr. 467, 349 P.2d 73].)

The evidence was also sufficient to support the guilty verdicts on the conspiracy count.

■ The elements of conspiracy are (1) an agreement; (2) specific intent; (3) unlawful objective; and (4) overt act. (*People* v. *Aday,* 226 Cal.App.2d 520, 533 [38 Cal.Rptr. 199]; 1 Witkin, Cal. Crimes (1963) p. 99.) ■ The existence of an agreement may be shown by circumstantial evidence. (*Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 184 [281 P.2d 250]; *People* v. *Olf,* 195 Cal.App.2d 97, 107 [15 Cal.Rptr. 390]; *People* v. *Massey,* 151 Cal.App.2d 623, 651 [312 P.2d 365].) It is not necessary to show that the parties met and actually agreed to undertake the performance of an unlawful act or that they had previously arranged a detailed plan for its execution. (*People* v. *Massey, supra,* p. 651.) The assents of the parties may be inferred from the nature of the act done, relationship of the parties, interests of the alleged conspirators, and other circumstances. (*Bompensiero* v. *Superior Court, supra,* p. 184; *People* v. *Aday, supra,* p. 534; *People* v. *Massey, supra,* p. 652.)

There was substantial evidence to establish all of the essential elements of the conspiracy.[6]

---

[6]Although three of the overt acts also constituted bases for the grand theft counts, conspiracy is a separate and distinct offense from the crime which is the object of the conspiracy. (*People* v. *Hoyt,* 20 Cal.2d 306 [125 P.2d 29].) Since imposition of sentence was suspended and defendants were placed on probation, we need not consider whether imposition of sentences on both the conspiracy and grand theft counts would violate the rule against double punishment. (See *In re Cruz,* 64 Cal.2d 178, 180-181 [49 Cal.Rptr. 289, 410 P.2d 825]; *People* v. *Scott,* 224 Cal. App.2d 146, 151-152 [36 Cal.Rptr. 402]; *People* v. *Keller,* 212 Cal.App.2d 210, 220-221 [27 Cal.Rptr. 805].)

The orders granting probation are affirmed.

McCabe, P. J., and Kerrigan, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 19, 1968. Mosk, J., did not participate therein.